**MASTERSON et ux. v. BOULDIN et al.**

**No. 2118.**

Court of Civil Appeals of Texas. Eastland.

March 28, 1941.

Rehearing Denied May 9, 1941.

Adkins, Pipkin, Madden & Keffer, of Amarillo, for appellants.

J. R. Creighton, of Mineral Wells, Lyndsay D. Hawkins, of Breckenridge, and L. M. Williams, of Benjamin, for appellees.

FUNDERBURK, Justice.

Plaintiffs, T. T. Bouldin and Lloyd G. Bouldin, sued defendants R. B. Masterson, Jr., and wife, Mrs. Laura T. Masterson, to establish plaintiffs' claim of ownership to $^{12}/_{100}$ undivided interest in described separate property of said Laura T. Masterson, and a like $^{12}/_{100}$ interest in said Laura T. Masterson's one half (½) of described community property of the Defendants. Plaintiffs' second amended original petition (trial pleading) including exhibits, comprises 75 pages of the transcript. Because of their great length only a very general statement regarding the pleadings will be made.

The suit is not the statutory action of trespass to try title. A question of title is involved, but whether legal title or equitable title is perhaps one of the matters to be decided. At any rate, the nature of the title as to whether legal or equitable is only important upon a question of whether it is such as will support an action for partition. Subject to the establishment of title, or ownership, of the interest claimed partition was sought of a part of the property. The estimated value of the property in which plaintiffs sought to establish their claim of ownership and to have partition thereof, including some personal property, was alleged to be one million dollars.

Two written instruments upon which the suit was founded were denominated *contracts* and bore date January 29, 1938, and February 12, 1938, respectively.

The later of said contracts signed by the parties, with married woman's separate acknowledgment by Mrs. Masterson, was as follows:

"The State of Texas
"County of Palo Pinto

"This contract this day made by and between Mrs. Laura T. Masterson of Amarillo, Texas, hereinafter styled party of the first part, and the law firm of Bouldin & Bouldin, composed of T. T. Bouldin and Lloyd G. Bouldin, hereinafter styled party of the second part. Witnesseth:

"That for and in consideration of the legal services rendered and to be rendered by said party of the second part, said parties have this day contracted together as follows:

"1. That the said party of the first part, Mrs. Laura T. Masterson, having been abandoned by her husband, R. B. Masterson, because of his conduct, treatment, and attitude toward her, and because of the unpleasantness existing between them making it impossible for her to live with him, and she is now living separate and apart from the said R. B. Masterson, her husband, has decided that a permanent separation is absolutely necessary, and to continue to live separate and apart from her said husband, and if needs be to protect her property rights sue for a divorce. The said Mrs. Laura T. Masterson is without funds with which to procure and pay attorneys to represent her in determining and procuring her property rights and in protecting her in such litigation as may be necessary to protect her and her property rights and secure for her an equitable and proper partition as between her and the

said R. B. Masterson, of the property owned by them jointly.

"2. That because of the treatment heretofore stated and the conduct of the said R. B. Masterson toward party of the first part, the said party of the first part, Mrs. Laura T. Masterson, is now living separate and apart from her said husband, and is forced to act as a feme sole, and contract as such, that she has employed and does hereby employ the said Bouldin & Bouldin, to represent her in such way and manner as may be necessary to determine and procure her property rights, whether it be by settlement or by court procedure.

"3. In consideration of the services rendered and to be rendered by the said T. T. Bouldin and Lloyd G. Bouldin, the said Mrs. Laura T. Masterson hereby sells, transfers, conveys, and assigns to the said T. T. Bouldin and Lloyd G. Bouldin 12% interest in any and all property to which she may be entitled, whether real or personal, separate or community, wheresoever located or situated in the State of Texas or elsewhere, except her homestead in Amarillo, Texas, said property being principally located in Knox, King, Potter, Carson, and Moore Counties in the State of Texas. It being the intention to include in this contract 12% interest in any and all property of any character belonging to the community estate or separate estate of the party of the first part, except as above provided.

"4. The said Mrs. Laura T. Masterson further agrees and contracts that the 12% interest of her said property has been agreed upon by her and her said attorneys as a reasonable and fair fee, which the additional amount of $1,000.00 which is to be paid immediately for the purpose of paying the traveling expenses of party of the second part, and included as a part of the fee herein in addition to the 12% herein provided.

"5. It is further agreed that at the option of either party hereto that party of the first part will pay to party of the second part 12%, in cash, of the reasonable market value of all the property above referred to, including all personal and real property and community, as well as her separate estate, except the homestead hereinabove excepted, said reasonable market value to be determined and fixed as of the date of said payment, said amount to be paid when party of the first part's property rights are determined either by settlement or litigation, and payable in Mineral Wells, Palo Pinto County, Texas, and when said payment of 12% in cash as herein stated is paid the contract of conveyance herein of said property shall terminate and be of no further force and effect.

"6. It is further agreed that party of the second part will not make any compromise or settlement of the property rights of party of the first part without her consent.

"7. It is further agreed that party of the first part, Mrs. Laura T. Masterson, will pay any and all court costs or expenses of litigation, if any, or any and all other expenses, except the personal expenses of parties of the second part, in carrying out their part of this contract, which are to be paid by them without any further expense to party of the first part.

"8. This contract is binding upon the parties hereto, their heirs, executors, administrators, and assigns.

"Witness Our Hands This the 12th day of February, A. D. 1938."

The first contract, upon execution of the second, was by mutual agreement destroyed with the intention that the second be substituted for the first.

In a jury trial, after the conclusion of the introduction of evidence, the court overruled a motion of the defendants for an instructed verdict in their favor and sustained such a motion of the plaintiffs. From the judgment rendered accordingly the defendants have appealed.

The parties will hereinafter continue to be referred to as plaintiffs and defendants, or by name.

In our opinion, the rights of the parties are to be governed by the contract dated February 12, 1938. Variances between that contract and the first contract dated January 29, 1938, are believed, as a practical matter, to be immaterial. If the first contract, properly construed, was an executed conveyance of the land, but the second contract, properly construed, was not an executed conveyance of the land, but at most a contract to convey, the last contract to whatever extent it makes clear the intention of the parties and the subject-matter is the sole evidence thereof.

Application of the principle of estoppel by contract and the analogy of the latter to estoppel by deed seem to us to have that effect. In Poitevent v. Scarborough, 103 Tex. 111, 124 S.W. 87, Poitevent had con-

·veyed by deed to Scarborough land, including a certain 109-acre tract. The deed was never recorded and at the time of the trial had been lost. Subsequently to its execution and delivery, Poitevent, because of an unsatisfactory description, made a new deed describing lands which did not include said 109-acre tract. The second deed recited that the same lands were conveyed as in the first deed. It was held, as a matter of law, that the grantee was estopped to claim that the first deed conveyed the land in suit, which was not included in the second deed.

Similarly, we think, under the allegations of plaintiffs' petition both parties would be estopped to claim any rights under the first contract not provided in the second contract.

■ The second contract, which, under the view indicated, must be regarded as the foundation of the suit, does not, in our opinion, of itself, as a matter of law, constitute a conveyance to plaintiffs of legal title to the land in suit. To say that the optional provision implies (for it certainly does not express) an agreement by plaintiffs to re-convey the land to Mrs. Masterson upon the election of either party to exercise the option to pay, or receive, money instead of land, seems to us to be, in any view, a somewhat forced construction. At any rate, an essential foundation for such implication, if it could exist, would be the fact that the contract constituted a present conveyance of the land. But with the first contract eliminated, and with plaintiffs estopped to prove such fact by it, that fact is not, to say the least, certainly shown by the second contract. Being at least doubtful, it will not support the implied agreement to reconvey, and, therefore, we think renders the contract reasonably susceptible to the construction that it is only a contract to convey.

■ This point is not, however, deemed of controlling importance; for, assuming the capacity of Mrs. Masterson to make the contract, binding upon both of the defendants, it is believed that, neither party to the contract having elected to exercise the optional rights, it shows an equitable title sufficient to support a right of action for partition.

The validity of the contract as a conveyance of the land and as constituting either legal or equitable title thereto is ably challenged by the defendants upon a number of different grounds.

■ Assuming that Mrs. Masterson and her husband were permanently separated, her capacity to convey her *separate* property without the joinder of her husband was not inhibited as the effect of R.S.1925, Art. 4617, as amended in 1937, Vernon's Annotated Civil Statutes, art. 4617. That question, it is believed, has been set at rest by the recent decision in Ross v. Tide Water Oil Co., Tex.Com.App., 145 S.W.2d 1089. In that case the court settled some conflicts by construing the statute to be cumulative, and to leave unaffected the law as previously interpreted authorizing a married woman when permanently separated from her husband, or when her husband was insane, to convey her separate property without the joinder of her husband.

■ The decision in Ross v. Tide Water Oil Co., supra, does not, however, settle necessarily the question of whether under R.S.1925, Art. 4619, as amended in 1927, Vernon's Annotated Civil Statutes, art. 4619, a married woman, permanently separated from her husband, would not require authorization by an order of court to empower her to convey community property. This is so for the reason that said decision seems to rest upon the permissive language employed in said Art. 4617. It is to be observed that the corresponding provisions of Art. 4619, to the contrary, purport to be mandatory. For the permissive "may" in Art. 4617, we find the imperative "shall" in Art. 4619.

Article 4619 seems to present a special problem of construction. It purports to empower the husband, alone, during coverture to dispose of the community property. It prescribes a single exception not including, or, at least, not necessarily including, circumstances where the husband and wife are permanently separated, or the husband is insane. This naturally suggests that a well known rule may be applicable to the effect that the express mention of one exception is the implied exclusion of other exceptions. There are, however, persuasive reasons which lead us to the conclusion that this rule does not here apply. It is true that many decisions, prior to the enactment of this statute, which in holding that the wife, if she had been abandoned by her husband, or her husband was insane, etc., could, when necessary, convey the community lands, denominated such circumstances as exceptions to the statutory provision; yet, the reasoning in many of the opinions seems to show they were not

true *exceptions* but rather circumstances or states of fact to which because the reason of the statute could not apply, the statute was held not intended to apply. Generally, so far as practical results are concerned, it is immaterial whether the reason why a statute is not controlling in a given case be because of exceptions to a general statutory provision, or whether such general statutory provision does not apply to the particular state of facts. Such a difference, however, is material upon the question of whether the above mentioned rule of construction is applicable.

The law being well settled at the time Art. 4619, was amended by ch. 148, p. 219, Acts of the 40th Legislature of 1927, that a deserted wife, or one separated from her husband because of his insanity, etc., could make a valid conveyance of community property, when necessary, the caption to said statute has the effect of an implied negation of any intention of the Legislature to change the law in such respects. The caption read as follows:

"An Act to amend Article 4619 of the Revised Civil Statutes of the State of Texas, 1925, relating to community property, and the disposition thereof, so as to provide for the control, management and disposition of community property by the wife, when the husband has disappeared and his whereabouts is unknown to the wife for more than twelve months, and providing the method and procedure for making proof of the existence of the facts necessary to give her such rights of control, management and disposition, and declaring an emergency."

By thus specifying as the only change intended to be made by the amendment, one dependent upon the fact that "the husband shall have disappeared and his whereabouts shall have been and remain unknown to the wife continuously for more than 12 months", it thereby, under operation of the very rule above mentioned, impliedly negatived any intention to change the effect of the statute as applicable to other circumstances or conditions. City of Cross Plains v. Radford, Tex.Civ.App., 73 S.W.2d 1093, and authorities therein cited.

It is, therefore, our conclusion that the 1927 amendment of Art. 4619 did not affect the power of a wife permanently separated from her husband, within the sense and meaning of the many prior decisions, to convey community property, subject, of course, to such conditions and limitations

as had theretofore been recognized as qualifying such power.

One essential element of the plaintiffs' alleged cause of action was the fact that at the time of the making of the contract (and it may be that upon a question of the time the contract was made the date of the first and superseded contract could be shown to be and treated as the true date) Mrs. Masterson and her husband were permanently separated. The case having been tried by jury the issue comprising such essential element was undoubtedly, we think, raised by the evidence so as to require its submission to the jury, or, in other words, was not conclusively established as a matter of law, unless such was the effect of some applicable and properly invoked principle of estoppel, or some rule of law requiring that conclusive effect be given to particular evidence notwithstanding other evidence to the contrary.

■ "In the broad sense of the term" says Corpus Juris, " 'estoppel' is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled [among other things] * * * by the act of the party himself, either by conventional writing or by representations, expressed or implied, in pais." 21 C.J. p. 1059, § 1. The contract in suit contains the recitation that Laura T. Masterson "having been abandoned by her husband, R. B. Masterson, because of his conduct, treatment, and attitude toward her, and because of the unpleasantness existing between them making it impossible for her to live with him, and she is now living separate and apart from the said R. B. Masterson, her husband, has decided that a permanent separation is absolutely necessary, and to continue to live separate and apart from her said husband, and if needs be, to protect her property rights, sue for a divorce." There was the further recitation: "That, because of the treatment heretofore stated and the conduct of the said R. B. Masterson toward party of the first part, the said party of the first part, Mrs. Laura T. Masterson, is now living separate and apart from her said husband" etc. The contract of which these recitations were a part was not successfully assailed on any ground of fraud, accident or mistake as a basis of cancellation or reformation.

■■ The question is presented whether under the circumstances Mrs. Masterson is bound by said recitations as an estoppel

by contract. One of two sorts of estoppel by contract is "estoppel to deny the truth of facts agreed upon and settled by force of entering into the contract." 21 C.J. p. 1110, § 110. Of this, the same authority goes on to say that if the contract is in writing, that sort of estoppel by contract is "analogous to certain phases oᶜ estoppel by deed, and is not in strict propriety a species of estoppel in pais, since it is wholly based on a written instrument." Id. "If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident or mistake." Id. p. 1111, § 111. The fact of whether Mrs. Masterson and her husband were permanently separated when the contract was made was certainly material to the contract, a fact upon which its validity depended. If no other rights were involved in this suit than the individual rights of Mrs. Masterson there would seem to be no logical escape from the conclusion that the issue of permanent separation was concluded against her by estoppel.

■ But, if as a matter of fact Mrs. Masterson and her husband R. B. Masterson were not permanently separated, then the latter has rights in their community property, at least, which are not precluded by estoppel. If, to protect those rights, the otherwise operative estoppel against Mrs. Masterson is rendered of no practical effect that cannot be avoided. If the husband and wife were not permanently separated the husband had the exclusive right to manage, control and dispose, not merely of his half interest in the community property, but all of it. In our opinion, he was not estopped to assert those rights by any representations of Mrs. Masterson to the effect that they were permanently separated. Hence, we conclude that, insofar as the question may be affected by estoppel, the issue of permanent separation was an issue of fact not conclusively established as a matter of law.

Defendants introduced in evidence, without limitation, or at least without any express limitation, allegations in plaintiffs' original petition in the case as follows: "Plaintiffs further represent that at the time of the said employment the said defendant Mrs. Laura T. Masterson was then living separate and apart from her said husband, R. B. Masterson, Jr., and *was permanently separated from her said husband* and had established a home in Mineral Wells, Palo Pinto County, Texas." (Italics ours.) Without express limitation, the defendants also introduced in evidence an excerpt from plaintiffs' second amended original petition as follows: "That shortly thereafter, to-wit, on or about the 29th day of January, 1938, defendant Mrs. Laura T. Masterson sought out these plaintiffs and represented to them that she was *then permanently separated from her husband and said representations were true as made by said defendant.* That all of said representations were true and were believed and relied upon by these plaintiffs; that said defendant Mrs. Laura T. Masterson then and there sought to and did employ these plaintiffs to represent her and if necessary to protect her rights to file suit for divorce and partition, as aforesaid, which employment these plaintiffs then and there accepted and began to perform and did perform as hereinafter alleged." (Italics ours.) Defendants also introduced without express limitation the petition of Mrs. Masterson in her divorce suit filed by plaintiffs as her attorneys, in Palo Pinto County, which pleading included allegations as follows: "[After alleging the marriage of the parties and their living together until about January, 1938] when by reason of the cruel and harsh treatment and improper conduct of the Defendant toward Plaintiff, she was forced and compelled to permanently abandon him since which time they have not lived together as husband and wife." Another allegation was that: "Soon after their marriage [her husband] began a course of unkind, harsh, cruel and tyrannical treatment toward plaintiff which continued until plaintiff was forced and compelled to abandon defendant as aforesaid, etc."

■ The plaintiffs contend that this evidence is conclusive in their favor upon the issue of permanent separation. The rule of law invoked is stated in American Jurisprudence, thus: "Ordinarily, a party who introduces documentary evidence is not allowed to impeach or contradict it or accept a part which is in his favor and repudiate another part which is opposed to his claim or defense. One introducing documentary proof bearing upon an issue vouches for its accuracy so far as that issue is concerned and is, as a general rule, bound by its recitals for all purposes." 20 Am. Jur. p. 771, § 915. Texas decisions relied upon are Stancil v. Mills & Export

Co., Tex.Civ.App., 146 S.W.2d 787; Texas & N. O. Ry. Co. v. Patterson, Tex.Civ. App., 192 S.W. 585; 17 Tex.Jur. 929, 930; Seifert v. Brown, Tex.Civ.App., 53 S.W.2d 117; Smith v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 23 S.W.2d 501; Horwitz v. Jefferson Co., Tex.Civ.App., 188 S.W. 26; Texas P. C. & O. Co. v. Bridges, Tex.Civ. App., 110 S.W.2d 1248; McClung Construction Co. v. Langford Motor Co., Tex. Civ.App., 33 S.W.2d 749; 16 Texas Digest, Evidence, ▮▮▮▮.

The evidence in question was not offered upon the issue of permanent separation. It was not admissible upon such issue, at least, when offered by defendants, nor could it have any probative value to the defendants upon such issue. Although the purpose for which the evidence was offered and admitted was not expressly stated, nor expressly limited, yet it is evident the purpose was for impeachment of the witness on the stand and who was giving his testimony in connection with which the evidence in question was introduced.

▮▮▮ There are exceptions to the general rule above quoted from American Jurisprudence. One is, in the language of the same authority, that "in analogy to the rule that a party may prove the truth of particular facts in direct contradiction of the testimony of his witness, the authorities hold that a party introducing documentary evidence may disprove facts stated therein." 20 Am.Jur. p. 771, § 915. "Another well recognized exception to the rule prohibiting a party from impeaching his own documentary evidence is that where the testimony is offered for a specified purpose, the party introducing it is not estopped to impeach or contradict it in matters the impeachment or contradiction of which is not inconsistent with the declared purpose of the introduction." Id. p. 772. The evidence under consideration contains nothing favorable to the defendants offering the same, unless it was inconsistent with and, therefore, tended to impeach one of the parties testifying as a witness. Since it could not have been properly admitted except for impeachment purposes, we think the case is not different from what it would have been if such purpose had been expressly specified. Applying the second exception above noted, it has been held that a party introducing a deposition taken by his opponent for the purpose of showing that it contradicts another deposition of the same witness taken subsequently

and offered by the opponent is not bound by the statements in the deposition offered by him. Thompson v. Gregor, 11 Colo. 531, 19 P. 461. It is held also, under such exception that a party introducing testimony taken in former proceedings to show fraud is not bound by it. Bailey v. Fransioli, 101 App.Div. 140, 91 N.Y.S. 852. In Weil v. State, 48 Tex.Cr.R. 603, 90 S.W. 644, 645, upon an issue of whether a purchaser of liquor had previously ordered it, the State introduced a letter of the seller acknowledging receipt of such order. The court prefaced its holding with the statement "Why the letter was offered by the state we do not understand, except that it tended to show a fabrication." The decision sustained a conclusion of fact of the trial judge that no order had been given, thus denying conclusive effect to the letter.

▮▮▮ The authorities seem to us to suggest this generalization may be warranted; namely, the rule does not apply, with the effect to conclude an issue regardless of evidence to the contrary, where the purpose of introducing the documentary evidence is not offered upon that particular issue. If the documentary evidence is introduced for the purpose of proving or rebutting proof of a particular issue or issues, the general rule applies. It may be that regardless of purpose, at least of express purpose, if part of the documentary evidence be favorable to the party introducing it and part unfavorable, then the introduction of all of it without limitation would be subject to the general rule.

▮▮▮ In the instant case the documentary evidence introduced by defendants, as said before, contained nothing favorable to them upon the issue of permanent separation. If the purpose of its introduction was not otherwise shown, that fact, it seems to us, would require a presumption that it was not offered upon the issue of permanent separation. It was introduced quite evidently upon the theory that it had some probative value upon a question of veracity or credibility, and, in our opinion, it should not be held to have concluded the issue of permanent separation which, as we have said before, was otherwise clearly made an issue in the evidence.

In our opinion, the court below erred in instructing a verdict for the plaintiffs, for which the judgment should be reversed and the cause remanded, which is accordingly so ordered.