**TRICE PRODUCTION COMPANY, Appellant,**

v.

**DUTTON DRILLING COMPANY, Appellee.**

No. 13282.

Court of Civil Appeals of Texas. Houston.

Feb. 11, 1960.

Rehearing Denied March 10, 1960.

Second Motion for Rehearing Denied March 31, 1960.

Edward D. Coulson, Houston, Hollis Massey, Columbus, for appellant.

Bates, Cartwright, Miller & Gilley, Ralph K. Miller, James H. Wright, Houston; Miller, Rutta & Allen, Hodges, Moore & Gates, Columbus, of counsel, for appellee.

BELL, Chief Justice.

On trial to the court without intervention of a jury, appellee recovered judgment against appellant for $77,042.78, with interest at the rate of 6% per annum from September 20, 1956, plus $10,000 as attorney's fees.

Suit was by appellee to recover the amounts alleged to be due under a written contract under which appellant had employed appellee to drill an oil or gas well for it in Colorado County. Suit was in the form of a verified account.

The contract provided that appellee should drill the well to a depth of 10,500 feet. Payment was to be made at the rate of $3.60 per linear foot, except that if formations were encountered that made drilling abnormally difficult or hazardous which caused sticking of drill pipe or casing or precluded drilling ahead under reasonably normal procedures, and such conditions continued to exist after 24 hours of effort to overcome the conditions, payment was to be on a day basis of $850 if appellee furnished drill pipe. Appellee did furnish the drill pipe. Appellee drilled to 8,818 feet, when it hit what it determined to be heaving shale and the drill pipe stuck. The account sued upon shows a charge of $31,744.80 for drilling this footage at $3.60 per foot. The drill pipe was stuck for some time and appellee billed appellant for 25 days and 23 hours at the rate of $850 per day for an aggregate of $21,214.66. In addition to this appellee paid for the account of appellant the sum of $23,368.77. This latter item was paid to Houston Oil Field Material Company (Homco) for services rendered in an effort to get the drill pipe loose so normal drilling could be restored. It is contended by appellee that this was appellant's obliga-

tion. A charge of $271.50 was made because of it being necessary for Tubescope to straighten some drill pipe that was allegedly damaged when the pipe was stuck. Then the sum of $443.05 was the price agreed upon by appellant and appellee for a water well appellee left for appellant's use when appellant took over the well.

It appears that appellee commenced the drilling of the well about the middle of July, 1956 and drilling continued satisfactorily and expeditiously, according to all testimony, until about midnight of August 4, when the drill pipe stuck. Mr. Owens, Drilling Superintendent for appellee, attempted to contact Mr. Hollingsworth, who was District Superintendent for appellant, to request him to get some one to furnish fishing service in an effort to get the drill pipe loose. Being unable to contact Mr. Hollingsworth, Mr. Owens called Homco, a specialist in the field, to do the fishing work. Mr. Hollingsworth knew of this next morning after Homco commenced its work. Work by Homco continued until about August 21, when, apparently the drill pipe had been loosened so that normal drilling could be resumed. Drilling was resumed and continued about a day when the drill pipe again became stuck. Homco again was called to do the fishing service. On Sunday, August 26, while efforts were still going on to loosen the drill pipe, Mr. Owens, appellee's representative, says that Mr. Hollingsworth told him that Trice wanted appellee to clean up the hole and move its rig off the location. This is disputed, but it is nevertheless the positive testimony of Mr. Owens.

At this point it should be noted that according to appellee the cause of the sticking of the drill pipe was a formation of heaving shale that had been encountered. While appellant strenuously contests this and contends the fault lay in the deficiency of the mud pumps, the condition of the drill pipe and incompetency of personnel, there is substantial evidence supporting appellee's contention, that the cause was heaving shale.

On Monday, August 27, the day following the Sunday on which Mr. Owens says Mr. Hollingsworth told him he could clean up the hole and move off, Mr. Owens talked with Mr. McCauley, District Manager for Trice. In this conversation Mr. Owens says that Mr. McCauley told him Trice wanted them to change the mud pump and drilling pipe or get off and that he refused because he did not think it necessary.

On the 27th the attorney for Trice wrote a letter to Dutton Drilling Company, which was received by Dutton sometime August 28, in which he informed Dutton that Trice was dissatisfied with performance on account of unreasonably slow progress and incompetency in performance. It stated that the causes of its dissatisfaction were insufficient volume of mud circulating so as to keep the hole clear of cuttings, badly worn drill pipe, slow progress and failure to furnish satisfactory supervisory personnel. The letter gave notice that unless these matters were corrected within 5 days Trice would take over the operation of the equipment of Dutton Drilling Company in order to complete the well and the parties would thereafter be controlled by paragraph 7 of the contract.

On August 28, attorneys for Dutton Drilling Company wrote Trice confirming the conversation they had with Mr. McCauley. The substance of this was that Trice wanted Dutton to alter its equipment and if it did not do so, Dutton should complete the fishing job, *move its equipment and relinquish possession to Trice or a drilling contractor of Trice's choice.* The letter further stated Dutton was not abandoning the well, but was leaving at the request of Trice and was waiving no right to compensation under the contract.

On August 31, attorneys for Dutton wrote Trice, stating that Dutton had now completed cleaning up the hole in good shape ready for Trice or a contractor of Trice's choice. Too, the attorneys advised that Dutton did not desire at this late date to replace its equipment and continue to attempt to penetrate the impenetrable forma-

tion encountered and it was, *as instructed by Mr. McCauley, dismantling its equipment,* and moving it to another location.

As shown by the pleadings, it was the contention of appellee that appellant had terminated the contract, as it had a right to do under Paragraph 6 of the contract. Paragraph 6 reads as follows:

"6. Stoppage of Work by Owner:

"Notwithstanding the provisions of Par. 3 with respect to the depth to be drilled, the Owner shall have the right to direct the stoppage of the work to be performed by Contractor hereunder at any time prior to reaching the specified depth, and even though Contractor has made no default hereunder, and in such event Owner shall be under no obligation to Contractor except as follows:

"6.1 If such work stoppage occurs prior to the spudding of the well, Owner shall pay to Contractor the sum of the following: (a) all expenses reasonably and necessarily incurred and to be incurred by Contractor by reason of the contract and by reason of the premature stoppage of the work, excluding, however, expenses of normal drilling crew and supervision; (b) ten per cent (10%) of the amount of such reimbursable expenses; and (c) a sum calculated at the standby rate for all time from the date upon which Contractor commences any operations hereunder down to such date subsequent to the date of work stoppage as will afford Contractor reasonable time to dismantle his rig and equipment.

"6.2 If such work stoppage occurs after the spudding of the well, Owner shall pay the Contractor (a) the amount owing Contractor at the time of such work stoppage under the footage rate, applicable day work rate, and standby rate; but in such event Owner shall pay Contractor for a minimum footage of ——— feet regardless of whether or not the well has been drilled to such depth at the time of work stop-

page; or (b) at the election of Contractor and in lieu of the foregoing Owner shall pay Contractor for all expenses reasonably and necessarily incurred and to be incurred by Contractor by reason of this contract and by reason of the premature stoppage of work plus the sum of $———."

If termination was under this paragraph, appellee says appellant would owe it for 8,818 feet of hole drilled at $3.60 per foot, and for 24 days and 23 hours at $850 per day for the period that fishing operations were being conducted in an effort to loosen the drill pipe so that normal drilling operations could be resumed. Too, appellee contends the cost of fishing service was, under the contract, the obligation of appellant and it having paid this for the benefit of appellant it was entitled to reimbursement. The small amount of $271.50 was, appellee contends, an obligation, under the contract, of appellant since it represents a charge for straightening drill pipe damaged during operations to loosen the drill pipe that was stuck.

Appellant contends that it terminated the contract, not under paragraph 6, but rather under paragraph 7, which reads as follows:

"7. Optional Right of Owner in The Event of Default by Contractor:

"In the event Owner is dissatisfied with the performance of Contractor hereunder on account of unreasonably slow progress or incompetency in the performance of the contract as a result of causes reasonably within the control of Contractor, Owner shall give Contractor written notice in which Owner shall specify in detail the cause of his dissatisfaction. Should Contractor fail or refuse to remedy the matters complained of within five days after the written notice is received by Contractor, Owner shall have the right at his option to take over the operation of Contractor's equipment for the purpose of completing the drilling of the well. Should such drilling operation be taken over by the Owner, the cost of the

operations conducted by Owner, without any allowance to Contractor for the use of the drilling tools, machinery, and appliances of Contractor, shall be deducted from the contract price calculated in accordance with the terms of this contract as though Contractor had completely performed said contract; and the balance, if any, shall be paid to Contractor. Owner shall return such drilling tools, machinery, and appliances to Contractor when the drilling of said well has been completed in as good condition as when taken over by Owner, normal wear and tear excepted. In the event the drilling operations are taken over by Owner as herein provided, all operations thereafter conducted shall be at the risk of Owner and the indemnity provisions of this contract shall not apply to such operations by Owner."

It contends that if it became dissatisfied on account of unreasonably slow progress or incompetency in performance of the contract as a result of causes reasonably within the control of appellee, it had a right to take over appellee's equipment and complete the well. In such event it would pay appellee, on a footage basis, as though appellee had drilled the well to contract depth, less the cost to it of completing the well, *by using appellee's equipment*. Appellant in its brief concedes that there is evidence to sustain an implied finding by the trial court (there were no findings of fact or conclusions of law requested nor filed) that the contract was terminated under paragraph 6. It seeks, however, to avoid the application of the general rule that where the evidence in the trial court is conflicting, on appeal it will be presumed, in the absence of express findings, that the trial court found the ultimate issues in a manner so as to support the judgment, by asserting that appellee introduced in evidence the letters of *August 27, August 28 and August 31,* and made no limited offer of them and appellee is therefore bound by such letters, and cannot impeach them. Appellant says

that the effect of such letters is to show that it terminated the contract under paragraph 7 and appellee, having introduced them in evidence, is bound by them and the trial court could not consider other evidence in the record, the effect of which was that termination was under paragraph 6.

Proceeding from the premise that the above established, as a matter of law, that termination was under paragraph 7 of the contract, appellant says that it had a vested contract right under the contract to be dissatisfied with performance of the contract and the court may not make inquiry as to whether grounds for dissatisfaction actually existed.

■ We have reached the conclusion that there was evidence from which the trial court could have decided that appellant terminated the contract under paragraph 6. The rule is, and it is applicable here, that an appellate court must presume that the trial court found an ultimate fact in a manner so as to support its judgment, if the trial court made no express finding, and, if there is evidence in the record to support such a presumed finding. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Northeast Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065; McDonald's Texas Civil Practice, Vol. 4, Sec. 16.10, p. 1302.

■ Appellant concedes the rule but seeks to avoid it by arguing, in effect, that evidence in the record that would support such a finding may not be considered because when appellee introduced the letters of August 27, 28 and 31 in evidence they constituted documentary evidence, the effect of which was to establish termination under paragraph 7 of the contract, and appellee is conclusively bound by it. He relies upon the generally stated rule that when a party introduces documentary evidence *without qualification*, he is bound by it and may not impeach it. However, while such is generally stated to be the rule, there are exceptions and one exception is

that in analogy to the rule that a party may prove the truth of particular facts in direct contradiction of the testimony of his witness, he may disprove facts stated in a document introduced by him. 20 Amer.Jur., § 915, p. 771; Masterson v. Bouldin, Tex. Civ.App., 151 S.W.2d 301, writ ref.; Jenkins v. Tanner, Tex.Civ.App., 166 S. W.2d 167, no writ hist.; Hillman v. Hillman, Tex.Com.App., 138 Tex. 111, 157 S. W.2d 143.

It is to be noted that throughout the trial of this case appellee was vigorously contending that termination of the contract was under paragraph 6 of the contract. It so plead and introduced evidence *without objection* that this was true. While the letters, and one of appellant's answers, were introduced without any statement as to purpose, it is obvious that it was not intended to be introduced to be binding on appellee, as showing termination under paragraph 7. Actually the letters of August 27 and August 31, written by appellee's attorneys, do not establish that termination was under paragraph 7. They show that it was appellee's understanding that Trice through its representatives was proposing that appellee correct certain alleged deficiencies or move its equipment off, and turn the hole over to Trice so it could use its equipment in completing the hole, or to a contractor of Trice's choice. Such is not what Trice would be entitled to do if termination was under paragraph 7. Under paragraph 7 Trice would only be entitled to use appellee's equipment without compensation for use and charge the costs of completion to appellee. There would be substantial difference in the cost of completing the well with equipment on location and the cost of completion with the added expense of moving a new rig to the well. Certainly, this is a view of the documents that the trial court could have taken.

■ It is true that appellant's attorney's letter of August 27, received by appellee sometime on the 28th, purported to terminate the contract under paragraph 7. However, this letter was written by counsel for appellant, and we think it no more binding on the adverse party who introduces it than would be oral testimony offered by a party of an adverse witness under our adverse witness rule. T.R.C.P. 182. Further, under the exception to the general rule above stated, we think other evidence contrary to recitals in the letter could be introduced to disprove such recitals.

Mention is also made in appellant's brief that appellee introduced in evidence without a statement of purpose one of the answers of appellee. It was obviously introduced for impeachment of appellant's witness even though appellee may not have so stated. It showed inconsistency between versions of Mr. McCauley as to what proposals were made to appellee by Trice. See Masterson v. Bouldin, supra.

■ It is to be noted the evidence offered by appellee, the effect of which was to show the contract was terminated under paragraph 6, was admitted without any objection by appellant. The state of the very voluminous record before us, therefore, as admitted by appellant, is such as to support the conclusion that the contract was terminated under paragraph 6 as contended by appellee.

The authorities cited by appellant do not present a situation such as we have here, where there was evidence in the record contradictory of the recitals in the documents introduced. We think all of the authorities cited by appellant may be alike characterized. In each the appellate court had before it a claim by appellant that there was no evidence supporting the trial court's judgment. Really, in those cases the only evidence in the record was the documentary evidence introduced by the complaining party on appeal. In the course of the opinion the courts did state the general rule as to the binding effect of the documentary evidence, but they did not have before them a situation calling for the application of the exception we have noted.

Appellant further contends that even should it be said that on Sunday, August

26, Trice terminated the contract under paragraph 6, appellee may not rely on such because it did not treat the termination as final by taking action under it, but it continued to treat with Trice. The trial court could have concluded, as appellee contends, that the talks with Mr. McCauley on the 27th were merely efforts to determine definitely if Trice had determined to require appellee to move its equipment so appellant could get another rig or use its own to complete the well. Actually the evidence supports a conclusion that appellee did act on the instructions to move its rig. On Monday, the 27th, representatives of appellee began to look for another location for its rig. Specifically it on the 27th was in negotiations with Russell McGuire Oil Company for a drilling contract for a well in Jackson County, and by noon on Tuesday, the 28th, had an oral agreement to drill a well for that company in Jackson County. The letter from appellant's attorney to appellee was not received by appellee until sometime the 28th. On the morning of the 28th Mr. Carroll, of Dutton, had gone to Jackson County to the proposed location of the McGuire well and about noon an agreement was reached.

Holding, as we do, that there is evidence to support the implied finding that appellant terminated the contract under paragraph 6, it becomes unnecessary for us to pass on appellant's contention that it had a vested right under the contract to become dissatisfied with performance and the court could not inquire into whether it had reasonable grounds for dissatisfaction.

Appellant contends that if the contract was terminated under paragraph 6, then appellee was not entitled to recover the expense incurred by having Homco furnish fishing service. It contends appellee could either recover for all reasonably and necessarily incurred expense, or on the footage drilled at the time of termination and all day work performed. Appellant takes the position that since Homco performed the work for appellee, this is an expense to it and that by suing for day work and footage drilled appellee elected. He cannot, so says appellant, recover expenses also.

We cannot agree with this construction of the contract. It will be noted that paragraph 6.2 provides that if the owner stops work prior to completion but after spudding in of the well, the owner will pay the amount owing for work performed on a footage basis, for day work rate and standby rate at the time work is stopped, or, (b) "at the election of the Contractor and in lieu of the foregoing Owner shall pay Contractor for all expenses reasonably and necessarily incurred and to be incurred by the Contractor by reason of this contract * * *." It is further to be noted that there are other parts of the contract material to this question. Paragraph 13.2 provides that if heaving shale or a similar formation is encountered and the drill pipe becomes stuck, the owner shall assume risk of loss or damage to the hole, and if the contractor is unable to loosen the pipe so as to commence normal drilling operations within 24 hours, further operations shall be on a day work basis. Paragraph 6 of Exhibit A of the contract provides as follows:

"Equipment, materials and services to be furnished by Owner.

"The machinery, tools, equipment, materials, supplies, instruments, services and labor hereinafter listed, including any transportation for such items, shall be provided at the location at the expense of the Owner * * *:

*   *   *   *   *   *

"6.14 Contract fishing tool services and fishing tool rental while operating on day work basis."

■■ We hold that there being ample evidence to support a finding by the trial court that the drill pipe stuck because heaving shale was encountered that, after 24 hours, appellee was entitled to compensation on a day work basis and that under the contract appellant was obligated to furnish fishing tool service. The part of para-

graph 6 authorizing appellee to elect to recover reasonable and necessary expenses, or for footage drilled and day work done does not contemplate that appellee's compensation on a basis of reasonable expenses shall include expenses that are the obligation of the owner. Of course, if the contractor actually furnished and paid for a service that was the obligation of the owner, it would be entitled to reimbursement, but this would not be a part of the compensation contemplated by paragraph 6.2. Obviously, to us, the reasonable and necessary expense there referred to is that incurred by the contractor in furnishing labor, material, equipment and service that the contractor was obligated to perform or furnish under the contract.

Appellant then contends that since appellee obtained the services of Homco and paid for it, appellee was not entitled to recover because under the contract appellant had not requested the service.

We find that reading the contract as a whole, and this construction is in keeping with the construction placed on the contract by both Mr. McCauley, appellant's District Manager, and Mr. Hollingsworth, appellant's District Superintendent, if heaving shale was encountered and the drill pipe stuck, after 24 hours, appellee would be on a day work basis and the obligation to furnish fishing service would be on appellant.

■ The evidence here shows that Trice knew Dutton was contending heaving shale had been encountered. Trice knew the drill pipe was stuck. Dutton tried to reach Trice's representative to notify him fishing service was necessary and he was unable to do so. At such time risk of damage to the hole and to appellee's equipment in the hole was on Trice. It became necessary for Dutton to call Homco direct. The very next day Trice was notified and Trice's representatives were present when Homco was rendering the service. When the pipe stuck a second time Trice's representatives were present when Homco

was called. They were also present while work was going on to again loosen the pipe. We think this all sufficient to establish appellee's right to reimbursement for the fishing service and the cost of straightening pipe of appellee damaged during the fishing operations.

■ In connection with the cost of $271.50 for straightening the drill pipe, appellant contends the pipe was damaged by negligence of appellee. The evidence is conflicting but there is evidence to support a finding that it was not due to appellee's negligence.

■ The trial court allowed attorney's fees in the amount of $10,000. Suit was on a sworn account for goods, wares, merchandise, personal service, equipment, trucks and machinery furnished under a written contract. By its pleading in the trial court, appellant resisted attorney's fees because the claim of appellee was prematurely presented on September 12, 1956, before the well was completed and the claim asserted excessive amounts, that is, it did not give credit to appellant for the costs of completing the well. Here appellant contends attorney's fees should not have been allowed for the following reasons:

1. Credit was not allowed appellant for the cost of completing the hole.

2. Credit was not given for free rig time.

3. Homco and Tubesco expense was incurred by Dutton for its own account without request from Trice.

4. Trice was not liable for the $271.50 charged by Tubesco for straightening drill pipe.

5. The first written demand presented on September 12, 1956, included items not included in the second demand and while the second demand was dated September 12, 1956, it was not filed in the trial court until September, 1957 and not received by Trice until October, 1957, when the trial com-

menced. The second claim reduced the amount asserted by $1,656.50.

The effect of appellant's contentions 1, 2, 4 and 5 is that the claim as presented to them contained items not recoverable and therefore the claim was excessive and attorney's fees should not be allowed.

With regard to all items, except 3, which we will notice separately, it suffices to say that even though appellant contended they were not recoverable the trial court held they were recoverable and we have affirmed that ruling. Too, it is observed that Article 2226, Vernon's Ann.Tex.Civ.St., authorizes the recovery of attorney's fees where suit is on a cause of action properly asserted in a sworn account, where any part of the account is recovered in the suit. No contention is made that the items sued for were not the proper subject of a sworn account except as to the amount paid Homco.

■ Appellant here, but not in the trial court, contends the statute is constitutionally invalid in allowing recovery where any part of the claim is recovered. Since this issue was not raised in the trial court and since we have held all items ultimately claimed and sued for were recoverable, we find this issue not properly before us for review. However, in a comparable situation the validity of the statute was upheld. Mc-Collum v. Nowell, Tex.Civ.App., 275 S.W.2d 866, no writ history. The cases cited by appellant are not applicable here. They were cases not involving the statute we have here. Too, in those cases the defendant had tendered the correct amount due under notes that were the subject of the suit before suit was filed. This was held to preclude interest and attorney's fees provided for in the notes in case of default and suit.

In its third contention above, appellant contends that the amounts paid to Homco and Tubescope were not the proper subject of a sworn account because these two companies were not parties to the contract and these sums were paid to third parties for services performed and appellee merely seeks to be reimbursed for money paid and not for services rendered, or labor and material furnished appellant.

While there is very serious doubt that these items are the proper subjects of a sworn account, we find it unnecessary to pass on the question. Even without such items the judgment without interest would amount to $53,402.51. There is no contention that these items were not the proper subject of a sworn account or for materials, labor and personal services. There is no contention here that attorney's fees of $10,-000, allowed by the trial court, was excessive or would be excessive if the payments to Homco and Tubescope were disallowed. F. & C. Engineering Co. v. Moore, Tex. Civ.App., 300 S.W.2d 323, n.r.e.

■ Appellant contends interest should not have been allowed because the claims were unjust and excessive. This contention is untenable for the reasons above stated.

■ Too, appellant says interest should not have been allowed because the amounts paid to Homco and Tubescope were not liquidated amounts ascertainable by computation under the contract.

Appellant in the trial court agreed these charges were reasonable, usual and customary. The only contest made by appellant over these amounts was as to its liability. We think the charges come within the meaning of Article 5070, Vernon's Ann. Civ.St. Federal Life Ins. Co. of Chicago v. Kriton, Tex.Com.App., 112 Tex. 532, 249 S.W. 193; H. B. Zachry Co. v. Terry, 5 Cir., 195 F.2d 185.

We have considered appellant's points complaining of exclusion and, in some instances, admission of, evidence. We find the points to be without merit.

The judgment of the trial court is affirmed.

## On Motion for Rehearing

There is only one part of appellant's motion for rehearing we deem it necessary to notice by writing.

It contends none of the claim sued on was the proper subject of a sworn account, nor was it otherwise a claim where attorney's fees were properly allowable.

As we noted in our original opinion, appellant was making no contention that, except for two items noted, the claim was not the proper subject for allowing attorney's fees, nor had any such contention been made in the trial court.

The matter, not having been raised in the trial court and not having been raised by a Point of Error in appellant's brief, may not be raised for the first time on motion for rehearing in this Court. Aycock v. Travis County, Tex.Civ.App., 255 S. W.2d 910, writ ref.

We express no opinion on the merits of the contention.

The motion for rehearing is overruled.