Johnny W. BALLARD, Appellant,

v.

AETNA CASUALTY AND SURETY COMPANY, Appellee.

No. 72.

Court of Civil Appeals of Texas.

Corpus Christi.

May 27, 1965.

Rehearing Denied June 17, 1965.

Perry Gathright, John H. Holloway, Houston, for appellant.

L. S. Carsey, of Fullbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

NYE, Justice.

This is a workmen's compensation case. Appellant brought this suit under the Workmen's Compensation Act seeking an award for total and permanent disability by reason of an alleged accidental injury while working for Pritchett Machine & Welding, Inc. The trial court submitted the case to a jury which found that the appellant had not been injured. Based upon the jury verdict the court rendered judgment that appellant take nothing and appellant perfected his appeal.

Appellant's first three points relate to no evidence, insufficient evidence and the great weight and preponderance of the evidence concerning the alleged injury. The appellant worked as a maintenance man in a machine and welding shop. He had worked for

the company approximately three months prior to his alleged injury. The appellant contended that he fell in a hole that was dug in the shop floor, injuring his back and neck. He continued to work two and a half weeks. Appellant testified that he notified his employer, visited a doctor and was admitted to a hospital in Galveston where he was treated for some seven weeks. He testified he was unable to work for over a year after leaving the hospital, and was not working at the time of the trial, some two years after the alleged injury. Appellant complained of severe pain in his lower back. His treating doctor, based partly on what appellant had told him, diagnosed the complaint as a ruptured disc or intervertebral disc syndrome and was of the opinion that the injury complained of by the appellant had caused it, and that he was in need of surgical operation in the disc space known as the fifth lumbar interspace. Appellant was examined just prior to the trial by a neurosurgeon who confirmed the possibility of a disc injury based on objective findings and x-ray, but stated that the latter was not conclusive. On cross-examination he testified that it is sometimes difficult to tell what was the initial producing cause of back pain.

Appellant admitted that he had received several prior back injuries, one in 1940 for which he received medical treatment; a back injury in the latter part of 1940's or early part of 1950 when he was hospitalized for eight or nine days; and a back injury while working for Brown & Root in 1958 which he testified was not very severe and that he got over it in two or three weeks and that it completely cleared up within two or three months. On cross-examination, the appellant was impeached with a written statement signed by him six and a half months after the 1958 injury in which he stated that his back had hurt since the injury and that he had not been able to work and it hurt so bad he could not sleep nights and nothing seemed to ease it. Appellant was impeached on a number of occasions, particularly as to other injuries that he had sustained. Appellant testified that he reported his present injury to the foreman and that he had told three other men about falling in the hole and having hurt himself. Appellee called the foreman and the three named employees that the appellant claimed knew of his injury. Each witness denied ever having been told by appellant that he had fallen in the hole or injured himself or needed medical treatment. A letter was introduced which was written by appellant addressed to a former employee of Pritchett Machine & Welding, Inc., complaining of a "nasty report" that this employee had made in regard to appellant. Appellant stated in the letter, that if this witness did not change his statement, appellant would tell the employer and insurance company that the witness had a heart condition and had to carry pills in his billfold for heart condition. There were many other discrepancies in appellant's testimony throughout the trial. For instance, appellant's version of the accident was as follows: He went over to the new machine that was running to turn it off. While backing away from the machine he fell into the hole causing his injuries. This was refuted by appellee's witnesses who testified positively that appellant's version of the accident could not have happened as stated. First of all, the machine in question could not have been running because it had not been installed. The hole was dug for the purpose of installing the machine over the hole to permit a vertical ram to travel up and down while the machine was running. Until the machine had been installed over the hole it could not run, nor could it have been turned off as testified by appellant. There were no witnesses who testified that they saw the appellant fall.

Appellant's points nine and ten relate to his first three points in that appellant claims that when the appellee introduced in evidence "Notice of Injury and Claim for Compensation" filed by appellant with the Industrial Accident Board, that the state-

ments contained therein were judicial admissions binding upon the appellee, which the jury and court could not ignore. The instrument showed on its face a statement by the appellant: "I fell in a hole in the shop floor injuring my neck and back." Appellant contends, therefore, that there is no evidence of probative force establishing that the appellant was not injured or, stating it another way, appellee introduced evidence which shows as a matter of law that appellant was injured.

■ It is a well-established general rule of law that "if a party introduces a statement of his adversary in evidence, he is ordinarily bound by it. For example, a party who introduces without limitation a pleading of his adversary will generally be bound thereby." 24 Tex.Jur.2d 382, 383, Evidence, § 718. Seddon v. Harrison, Tex.Civ.App., 367 S.W.2d 888, writ ref., n. r. e., and cases cited; Parkerson v. American Hospital & Life Ins. Co., Tex.Civ.App., 322 S.W.2d 27, dis., w. o. j.; Lock v. Morris, Tex.Civ.App., 287 S.W.2d 500, n. r. e.

"However, while such is generally stated to be the rule, there are exceptions and one exception is that in analogy to the rule that a party may prove the truth of particular facts in direct contradiction of the testimony of his witness, he may disprove facts stated in a document introduced by him." Trice Production Company v. Dutton Drilling Company, Tex.Civ.App., 333 S.W.2d 607, writ ref., n. r. e. (1960); 20 Am.Jur. § 915 p. 771; Masterson v. Bouldin, Tex.Civ. App., 151 S.W.2d 301, writ ref.; Jenkins v. Tanner, Tex.Civ.App., 166 S.W.2d 167, n. w. h.; Hillman v. Hillman, Tex.Com. App., 138 Tex. 111, 157 S.W.2d 143. In the Trice Production case, supra, the Court said:

"It is true that appellant's attorney's letter of August 27, received by appellee sometime on the 28th, purported to terminate the contract under paragraph 7. However, *this letter was written by counsel for appellant, and we think it no more binding on the adverse party who introduces it than would be oral testimony offered by a party of an adverse witness under our adverse witness rule.* T.R.C.P. 182. Further, under the exception to the general rule above stated, we think other evidence contrary to recitals in the letter could be introduced to disprove such recitals."

■ The appellee plead that appellant was not injured. The statement by the appellant in the instrument introduced was the same statement that the appellant had already made on the witness stand. Subsequently, there was other evidence introduced by the appellee without objection, tending to prove that the appellant had not been injured on the job as stated in the instrument. This was in conflict with appellant's testimony and the statement. The jury resolved the question. A party may prove the truth of a particular fact in direct contradiction to the testimony of a witness just the same as he may disprove facts stated in a document which he has introduced. Trice Production Company v. Dutton Drilling Company, supra; Brumit v. Cokins, Tex.Civ.App., 281 S.W.2d 154, wr. ref., n. r. e.; see also 24 Tex.Jur.2d § 719 and Topletz v. Thompson, Tex.Civ.App., 342 S.W.2d 151, and cases cited therein.

Appellant also complains that exhibits P #12 and P #13, being a "physically fit for employment" slip, and a "report of physical examination," were actually appellee's exhibits introduced by him and therefore he is bound by the statements contained therein the same as the other exhibit above. We have carefully reviewed the record and are convinced that appellant offered the exhibits and the court admitted them into evidence as exhibits belonging to the plaintiff.

Appellant contends that appellee actually introduced exhibit P #1 (all of the hospital records) which establishes as a fact the injury and incapacity of the appellant. The appellant offered that portion of exhibit P #1 with reference to the hospitalization

and treatment of appellant (Johnny Ballard) after July 1, 1961, (a date subsequent to the date of the alleged injury). The appellee objected, contending that all of the hospital records should be introduced and not just the portion concerning the alleged injury. The court overruled the objection stating that the appellant could offer such part of the record as he saw fit. At that time the appellee then offered the balance of exhibit P #1 concerning injuries prior to the claim in this suit because it covered his disability on prior injuries. The court then admitted all of it. Exhibit P #1 was admitted into evidence, one portion offered by appellant concerning the alleged injury after he had been admitted to the hospital as a result of the alleged injury of this suit, and the other part of exhibit P #1 offered by appellee as to a previous injury to which the appellant's only objection was, that it was not to be admitted until that portion was proven to be material. The point is not well taken.

■■ We have considered the entire record and find that the evidence is sufficient to support the jury's answer. The Court of Civil Appeals cannot substitute its judgment for that of the jury even if from the evidence they would have found different from the jury. We believe and hold, that the fact issues necessary to be determined in this case were resolved by the jury's findings which were supported by the evidence, and which findings were not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Appellant's points one, two, three, nine and ten are overruled.

■ Appellant's point six, being a motion to disregard the jury findings for the reasons set forth in appellant's points one through three and nine and ten, has already been considered and is overruled. The second part of his point six raises, for the first time, the point that the trial court should have declared a mistrial because the verdict of the jury was incomplete. This was not assigned as a ground of error in appellant's motion for new trial and is therefore overruled as being waived. Rule 374, Texas Rules of Civil Procedure.

Appellant's position under points four and five is that the appellee insurance company made proof of prior claims and injuries and elicited information merely for the sake of proving prior claims to prejudice the jury against the appellant by inferring that appellant was a malingerer in respect to the injury sued on.

■ Appellee plead, in addition to a general denial, that appellant's loss of earning capacity was caused by his condition of health or some other accidental injury and in the alternative, that under the provisions of Section 12c of Article 8306, the appellant had suffered one or more previous injuries which contributed to appellant's present condition of incapacity, if any, which would limit appellee's liability under the provisions of Section 12c of Article 8306. Appellant admitted several previous injuries to his back beginning twenty years prior to the alleged injury, the basis for this suit. In addition, he admitted to injury as a result of a fight and being hit over the head with a beer bottle; an incident when he was kicked in the head by a calf, an automobile accident in which he received head injuries and was unconscious; and another injury to the head when he raised up under a shed causing a severe brain clot necessitating an operation. On cross-examination in regard to one of the injuries in 1958, he was asked whether or not he had had two injuries at that time for which he had made a claim. The answer and questioning was as follows:

"A. They wanted me to sign a release.

Q. You had two separate injuries about that time for which you made a claim?

A. I didn't make a claim over the injury.

Q. You were paid money.

A. The insurance man came out.

MR. HOLLOWAY (attorney for appellant): Object at this time to any other injury unless they are related to the particular injury sustained by this man or connected in some way for impeachment purposes or to show he made any statement that is inconsistent.

MR. CARSEY (attorney for appellee): We will tie it up.

THE COURT: Overruled.

Q. Going back, you had two separate injuries you were claiming on the job in 1958?

A. Yes.

Q. What was that injury?

A. A finger injury, a broke tendon in my hand.

Q. You were paid money for that?

MR. HOLLOWAY (attorney for appellant): Again I object to that as being immaterial to any issue and I ask the Court to instruct the jury to disregard it.

THE COURT: Overruled."

The question was never answered. There were other questions asked in connection with the head injuries. Appellee's witness, the foreman on the job where appellant worked, testified that he had observed appellant doing unusual things while working at the machine shop, including an attempt to undo an electrical transformer and switch box and some peculiar behavior concerning instructions on getting a pot of coffee. The owner of the company testified that he terminated appellant's employment partly because he didn't think appellant mentally capable of holding the job as a helper and night watchman. While a prior injury must have been compensable in order for it to be the basis for a reduction of a carrier's liability under Section 12c of Article 8306, a prior non-compensable injury, disease or condition of health may be defensively plead and proved as the sole cause of plaintiff's incapacity. 63 Tex.Jur.2d, p. 425; Texas Indemnity Ins. Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915, writ ref., w. o. m.; Traders & General Ins. Co. v. Watson, Tex.Civ.App., 131 S.W.2d 1103, writ dism., judg. cor. This is an inferential rebuttal issue and the burden of proving the negative of such issue is upon the claimant. Hodges on Special Issue Submission in Texas, Chapter 3, Section 16; Hartford Accident & Indemnity Company v. Shelton, Tex.Civ.App., 119 S.W.2d 118. The back injury and head injury were compensable injuries and were admissible. Appellant's Notice of Injury and Claim for Compensation and statement attached thereto in connection with the 1958 back injury and a portion of appellant's petition in connection with the suit arising out of a head injury were admitted into evidence to impeach the appellant. There were no objections to either. Some of the evidence was admissible on the issues submitted by appellee's pleadings. Some of the evidence was not objected to, such as the blow by the beer bottle and the head injury as a result of the automobile accident. Other evidence was properly admitted for impeachment without objection. We believe that it was error for the appellee to question the appellant as to whether or not he had been paid any money, but in view of the fact that the appellant did not answer the question, we believe that such error as to this, and any possible error as to the other evidence, did not amount to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. Rule 434, T.R.C.P.

Appellant cites as authority for such error Hartford Accident & Indemnity Co. v. McCardell, Sup.Ct., 369 S.W.2d 331, and St. Paul Fire & Marine Insurance Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744. In the McCardell case one of the questions was whether such documentary evidence regarding prior claims before the Industrial Accident Board was admissible. We believe that the questionable evidence can be distinguished and under the facts before us if there was error it was harmless under Rule 434, T.R.C.P.

■ Appellant's points seven and eight complain that the trial court erred in admitting evidence of certain witnesses which tended to establish alleged idiosyncrasies and peculiar behavior of the appellant in connection with his work and evidence that appellant was collecting salary from his employer for unauthorized work time.

Appellant worked approximately two and one-half weeks after his alleged injury and according to him, Mr. O. D. Pritchett, the owner of the business, terminated his employment on a temporary basis * * * "not over ten days or two weeks." Appellant admitted that he did not inform Pritchett of his injury during the last two and one-half-week period that he worked, nor at the time that he was let go on a supposedly temporary basis. At the end of the two-week lay-off period, appellant attempted to regain employment but was refused. He testified that a few days after the two-week lay-off period, "without a warning or nothing I was laid off", appellant contacted several of his fellow employees and inferred that he had been fired because he had gotten hurt on the job and was going to see a doctor.

Appellant testified that he had been guaranteed an average weekly wage which would correspond to the ten to twenty hours of overtime that he was putting in. Pritchett testified that appellant had worked unauthorized hours and was drawing an enormous amount of money for the position

as helper. Appellant denied that Pritchett had ever talked to him about the excessive unauthorized work time. Pritchett testified that he had talked to appellant on at least two occasions, asking appellant as to why he kept violating the orders of working excessive hours. Pritchett was then asked if he had received reports from his employees in the course of their job or their employment about the way in which appellant was doing his job and any unusual occurrences involving him. Pritchett testified that the job foreman had come to him on several occasions relating some incidents, and he felt that the man should be dismissed * * * "that he was incapable of being responsible." Objection was overruled. Pritchett was then asked: "Did you terminate Mr. Ballard's employment?" He stated: "Yes". When asked why, he stated that he did not think he was mentally capable of holding the job. There was no objection to the answer. We believe that such questions under the facts were not objectionable, and were proper rebuttal to appellant's testimony, or if it was error, it was harmless. Rule 374, T.R.C.P.

■ Other complaints made by appellant under point seven were to various witnesses' testimony as to alleged idiosyncrasies and peculiar behavior of the appellant in connection with his work, but such complaints were not brought forward in his amended motion for new trial and since such rulings of the trial court were not assigned as ground of error in appellant's motion for new trial, they are waived. See Rule 374, T.R.C.P.

There were seventeen special issues submitted to the jury. Special Issue No. 1 inquired as to whether or not the appellant sustained an injury, to which the jury answered that he had not. Special Issues 2 through 15 were conditional issues (based on an affirmative answer to Issue No. 1) and therefore not answered. Special Issues 16 and 17 were defensive issues submitted by the appellee in which they in-

quired: (16) that appellant's incapacity, if any, was not caused solely by emotional disturbances wholly unrelated to his employment and unrelated in whole or in part to any injury alleged to have been sustained on or about June 30, 1961; and (17) that appellant's incapacity, if any, is not caused solely by an injury or injuries sustained by him before June 30, 1961. Appellant objected to Special Issues 16 and 17 on the usual evidence points; that there were no pleadings to support them; that the issues improperly placed the burden upon the appellant; and that the issues constituted a comment by the court on the sufficiency of the evidence. The judgment of the court stated that prior to the receipt and filing of the verdict the appellee in open court announced that it desired to withdraw from the consideration of the jury Issues 16 and 17, and waived the answering of the issues by the jury and any right or benefit which might accrue to appellee by any answer that the jury might make to Issues 16 and 17, and moved the court to withdraw such issues for consideration. The motion was granted by the court and the jury was instructed not to answer the issues. Appellant excepted to the court's ruling.

Appellant argues that the issues were improperly worded and further that since such issues were unconditionally submitted, he is entitled to the issues being answered by the jury because it would have produced a conflict with the jury's finding (that appellant had not suffered any injury on June 30, 1961). Citing Traders & General Insurance Co. v. Daniel, Tex.Civ.App., 114 S.W.2d 336 (1938). The issues in question were appellee's pleaded defensive issues, and we believe that such issues would have become material only if the jury had answered Special Issue No. 1 in the affirmative, and had found that appellant had incapacity resulting from such injury. There are other reasons that an answer to the two special issues would not be in conflict. Since the two issues in question were inferential rebuttal issues, they placed the burden of proving the negative upon appellant. The jury could answer such issues only in one of two ways: Either that the appellant had met the burden of proving that his incapacity, if any, was not caused solely by emotional disturbances or prior injuries, or that he had failed to prove that such incapacity, if any, was not caused by those conditions. The jury's failure to find that appellant sustained an injury to his body on June 30, 1961, did not conflict with a finding that appellant's incapacity, if any, is not solely caused by emotional disturbances or prior injuries.

In the Supreme Court case of Little Rock Furniture Manufacturing Company v. Dunn, 148 Tex. 197, 222 S.W.2d 985, the Court said:

"It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered."

■ If you consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer, by taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the appellant and the other would require a judgment in favor of the appellee, then the answers are fatally in conflict.

■ We do not believe that there could be any conflict between answer to Special Issue 1 and the possible answers to Special Issues 16 and 17, or that by disregarding a possible conflicting answer the rest of the verdict would require a judgment to be entered in favor of the appellant. Appellant's points eleven and twelve are overruled.

The judgment of the trial court is affirmed.