### BURKETT et al. v. BURKETT.

No. 12222.

Court of Civil Appeals of Texas. Dallas.
April 10, 1937.

Rehearing Denied May 22, 1937.

McGown & McGown, of Fort Worth, George P. Brown, of McKinney, and B. E. Godfrey and Jno. M. Scott, Jr., both of Fort Worth, for appellants.

E. W. Merritt and Truett, Abernathy & Wolford, all of McKinney, for appellee.

LOONEY, Justice.

Mrs. Ollie Burkett, widow of John Burkett, who died during the year 1925, sued her sons John C. and Paul Burkett, for the cancellation of a deed executed by her November 20, 1929, whereby she conveyed to her said two sons her undivided half interest in a 60-acre tract of land situated near the town of Weston, Collin county, the same having constituted the community homestead of herself and husband prior to his death and since has continued to be her homestead.

No question has been raised as to the sufficiency of the pleadings. In substance, the grounds alleged by Mrs. Burkett for the cancellation are that undue influence was exerted and fraud was practiced by her sons upon her, inducing the execution of the deed. The defendants (appellants) answered by a general denial, ratification, waiver, and a plea of four-year limitation.

The material facts are these: At the time of the transaction here involved, Mrs. Burkett had four living children—appellants John and Paul, another son Vady Monroe, and a daughter, Mrs. Dovie Mugg; also several grandchildren, the issue of a deceased son. The record discloses that since the death in 1925 of the elder Burkett, John has had charge of and controlled the 60 acres in question, most of the time residing in the house with his mother; collected the proceeds of the farm, also his mother's pension—$25 per month—paid her as widow of a Confederate soldier, all of which John spent as he chose; however, his mother received her support from him. The record further discloses that the elder Burkett left a will, bequeathing to John and Paul, excluding his other children and subject to a life estate in appellee, the interest owned by testator in the land in question. The probate of this will was successfully contested by Mrs. Dovie Mugg, as the county court of Collin county on November 16, 1929, refused to probate same, on the ground that at the time of its execution, the testator was without testamentary capacity. It seems that considerable bitterness grew up between John and Paul and their sister, Mrs. Mugg, on ac-

count of the will contest and other matters. The evidence tends strongly to show that appellants sought to prejudice their mother against her daughter and evidently succeeded, for being asked what caused her to sign the deed, appellee answered, "There were so many lies told me—that caused it—half a barrel would not hold the lies that were told me." At the time appellee executed the deed, she was 83 years of age; her hearing, eyesight, and memory were impaired, her health was bad, she was feeble, childish, and easily influenced and, as clearly indicated by evidence, she was under the influence of John, who endeavored to prevent her from visiting her daughter, Mrs. Mugg, objected to Mrs. Mugg visiting her mother, saying that, if he had the power she (Mrs. Mugg) would be prevented from coming on the place, and that a day would come when neither she nor old man Mugg (her husband) would come on the place. On November 20, 1929, four days after the court refused to probate the will of his father, John indirectly procured the execution of the deed in question and soon thereafter caused it to be recorded in the deed records of Collin county.

Appellee testified that she did not understand what she was signing; that if she had she would not have signed the deed; that she was not angry with either of her children, would not prefer one over another, and wanted each to receive his or her share of the property; that she did not know at the time she signed the deed that its effect would be to disinherit the other children; and that she did not discover the effect of what she had done until about one year prior to the time she was testifying. There was also evidence that both Paul and John represented to their mother that, if she would convey to them her interest in the land, the property would be held in the Burkett name, and that the other children would be paid for their shares. Mrs. Mugg testified that no effort had been made by appellants, or either of them, to pay her anything for her interest in the land; however, appellants denied that they made any promise such as was testified to by their mother.

The court after properly defining "undue influence," submitted certain pertinent issues to the jury, to which they answered that, Mrs. Burkett (appellee) was induced to execute the deed in question by reason of undue influence on the part of appellants (or one of them) as alleged; that prior to the institution of the suit (October 28, 1935), four years had not elapsed since appellee was freed from such undue influence; also that prior to the execution of the deed, Paul Burkett promised appellee that, if she would give the place (her half interest) to him and John, he would keep it in the Burkett name and would pay the other children for their interests; that at the time Paul made this promise he did not intend to comply therewith; that the promise was a material inducement, but for which appellee would not have executed the deed; and that four years had not elapsed prior to the institution of the suit since appellee discovered, or by the exercise of reasonable diligence under the circumstances, could have discovered that Paul did not intend to pay appellee's other children for their respective interests in the land. After properly defining the term "waiver," the court submitted the following: "Do you find from the preponderance of the evidence that the plaintiff (appellee) had waived her right, if any, to have the deed in question cancelled?" to which the jury answered "No." Based upon these findings, the court rendered judgment for appellee against appellants, canceling the deed in question, from which they appealed.

As grounds for reversal, appellants urge propositions to the effect that, the evidence most favorable to appellee was insufficient to establish the fact that the deed was executed as the result of "undue influence"; that the undisputed evidence showed that, after executing the deed, appellee ratified and confirmed the same; and that there was no evidence justifying the submission of issues Nos. 3, 4, and 6, in regard to the alleged fraudulent representations by Paul Burkett, to the effect that, if appellee would deed her interest in the tract of land to him and John, they would keep it in the Burkett name and pay the other children for their interests.

■ It is obvious, we think, that these propositions and the assignments upon which they are based simply challenge the sufficiency of the evidence to sustain the findings of the jury. We overrule these contentions, being of opinion that the findings were fully authorized by evidence, and they are adopted as our conclusions of fact on the issues represented.

The numerous cited cases on the subject of "undue influence" seemingly are in general accord on the law; however, the one more nearly in point on the facts is Manahan v. Manahan (Mo.Sup.) 52 S.W.(2d)

825. In that case, the court in part said that, "It is not necessary that undue influence be proven by direct evidence. It may be shown by or inferred from the facts and circumstances in evidence. * * * The relation of confidence which ordinarily exists between mother and son, without more, would not be sufficient to raise the presumption of undue influence. There must be in addition substantial evidence showing especial trust in the management by the son of the mother's business matters, or unusual influence and control arising from the son's personal care and charge of the mother.' * * * 'It is clear that in every instance of a confidential and fiduciary relation of a nature that calls into action the presumption of undue influence there are two persons, one of whom is subservient to the dominant mind and will of the other by reason of the age, state of health, illiteracy, or mental debility of the subjected one. Since all of these cases concern property passing by deed or by will, there are also present in every case land, funds, a going business, or other things of value, which belong to the subservient one, but which often are possessed or managed by the controlling person. In some cases the person of influence with the owner merely advises concerning the property. We find in many of these cases also a control of the subject person by the other, due to the age or the mental or physical debility of the one having the power of disposition of property. * * * The burden of proving the existence of such relation between the donor and donee is upon the person asserting it (27 C.J. 46), but when the relation is shown an adverse presumption arises and the recipient of the gift has the burden of establishing its absolute fairness· (12 R.C.L. p. 953, § 28, note 6). * * * Whatever may be said as to her son John, there appears to be no good reason why Mrs. Manahan would desire to leave her daughter out of the distribution of her estate." To the same effect, see 42 Tex.Jur. page 792, § 2, page 794, § 5, page 797, § 6; also Besteiro v. Besteiro (Tex.Com.App.) 65 S.W.(2d) 759; Mayes v. Mayes (Tex.Civ.App.) 159 S.W. 919; Holt v. Guerguin (Tex.Civ.App.) 156 S.W. 581; Davidson v. Davidson, 180 Ky. 190, 202 S.W. 493; Kelly v. Fields, 167 Ky. 796, 181 S.W. 657; Gross v. Courtley, 161 Ky. 152, 170 S.W. 600.

The exercise of undue influence by either appellant that induced Mrs. Burkett to execute the deed would vitiate the same. Besteiro v. Besteiro (Tex.Com.App.) 65 S.W.(2d) 759; 18 C.J. 238, § 166.

The issue submitted in regard to the alleged fraudulent representation was confined alone to a representation by Paul Burkett; however, there is evidence showing that both Paul and John promised their mother that, if she would convey her interests in the land to them, they would pay the other children for their interests. In regard to this matter, Mrs. Mugg, the married sister, testified that appellants had neither paid or offered to pay her anything for her share in the land. However, as appellants denied having made any such promise, we think it unreasonable to assume that they made any effort to comply with a promise which they claimed was never made.

The jury having found the issue of fraud in favor of appellee, we think the provisions of article 4004, R.C.S., are applicable. This statute provides that all persons procuring a conveyance of land by false representations or promises, and those deriving benefits from any such conveyance, are jointly and severally liable. Also see 7 Tex. Jur. page 908, § 17, reading: "But where the transaction amounts to a gift (as in the instant case), it appears that the instrument may be set aside for fraud, even though the party receiving the benefits did not participate in the fraud."

Having duly considered all assignments and propositions urged for reversal, and finding no material error, the assignments and propositions are overruled, and the judgment of the court below is affirmed.

Affirmed.