**PIONEER FINANCE & THRIFT COR-
PORATION et al., Appellants,**

v.

**Wilbur E. ADAMS, Appellee.**

No. 4208.

Court of Civil Appeals of Texas.

Eastland.

March 15, 1968.

Rehearing Denied April 5, 1968.

Andress, Woodgate & Condos, William Andress, Jr., Estep, Waters, Benthul & Mc-Crea, Lynn Estep, Jr., Dallas, for appellants.

Fritz, Vinson & Turley, Edward C. Fritz, Dallas, for appellee.

WALTER, Justice.

Wilbur Adams and his wife recovered a judgment against Pioneer Finance & Thrift Corporation, doing business as Termplan and Industrial Finance & Thrift Corporation, on an "unreasonable collection efforts" case and the defendants have appealed.

The jury found that Termplan made unreasonable collection efforts against Mr. and Mrs. Adams; that Termplan made collection efforts against Adams and his wife with a purpose of causing mental or emotional pain and suffering; that Termplan made unreasonable collection efforts against Adams and his wife with reckless disregard of their health and welfare; that Termplan committed a trespass upon Mr. and Mrs. Adams' property on February 6, 1963, and that such unreasonable collection efforts or trespass by Termplan were a proximate cause of mental or emotional pain and physical illness of Mr. and Mrs. Adams. The jury awarded Mr. and Mrs. Adams $2,500.00 each for mental or emotional pain and physical illness caused by such unreasonable collection efforts or trespass. The jury also found that in making such unreasonable collection efforts or trespass Termplan acted with malice toward Mr. and Mrs. Adams and awarded each $2,250.00 exemplary damages.

Adams testified substantially as follows:

My name is Wilbur Adams and I was formerly employed by Mrs. Baird's Bread Company. I made a deal with Cliff Automotive Service to make some repairs on my car. The garage man took me to Termplan's office when the loan papers were drawn and the garage man and I received a check for $283.00 to be paid in twelve monthly installments of thirty dollars. This was in the Fall of 1962. When I became delinquent on this contract, Termplan sent letters and made telephone calls at night. Quinnbar is the name of one person who called. When I was delinquent I would have an average of about thirty calls per week. Quinnbar called five times one night and the last time he called he said: "You're nothing but a deadbeat and I should come and clean the whole town up with your hide." That is the only time he ever threatened me with personal violence. He also threatened to turn me over to the Retail Merchants Association, ruin my credit and take my automobile. These calls would last from three to five minutes. I received several calls from Termplan where I worked.

Sometime in February 1963, I went to my driveway for my car and it was gone. I reported my car stolen to the police. I found my car at St. John's Automobile Recovery. I went to the bank and purchased a Cashier's check for the balance of my account with Termplan and recovered my car. Mr. Adams was asked the following questions and gave the following answers:

"Q. Will you state the facts, please, Mr. Adams, as to during the time you were being contacted by Termplan you experienced any pains or discomfort or physical illnesses?

A. Yes, sir, I experienced a lot of pain and physical discomforts as frequent as the calls were made at my home.

Q. Now, approximately when, in relation to the contacts that were being made, when did you experience these various illnesses or whatever you will describe?

A. At night after supper when the 'phone would ring, just afraid to pick up the 'phone, scare you out of the chair as to whether that was Termplan calling again, knowing I didn't have the money to pay, sick at my stomach, nervous all the time. In my work I made a lot of errors worrying on how I could get these payments made.

Q. You say you were sick at your stomach, can you tell us a little more about— describe a little more what kind of sickness you had at your stomach?

A. I experienced sickness and pains in the stomach and vomiting.

Q. When did you experience any vomiting, Mr. Adams?

A. It was on one occasion after they had talked to me at night on the telephone."

■ Appellants' first point is that the court erred in submitting issue number four because the mortgage signed by Adams, authorized it to repossess the car. Issue four inquired if Termplan committed an unauthorized trespass upon the Adams' property on February 6, 1963, being the date of the repossession by appellants. Appellants objected to the submission of such issue because the evidence conclusively establishes that Adams authorized the repossession of his automobile upon default.

In Eichman v. Highland Park State Bank, Tex.Civ.App., 345 S.W.2d 352, (writ ref., 1961), this court said:

"The Courts of Texas, since the case of Singer Sewing Machine Co. v. Rios, 96 Tex. 174, 71 S.W. 275, 60 L.R.A. 143, have recognized that a provision in a chattel mortgage which authorizes and empowers the holder to take possession of mortgaged property upon the mortgagor's default, and sell same at public or private sale is valid."

**320**

We hold there was no unauthorized trespass on the Adams' property by appellants in repossessing his automobile.

■ No objections were made to the damage issues by appellants. The damage issues asked what amount of money would compensate Mr. and Mrs. Adams for their mental or emotional and physical illness proximately caused by the unreasonable collection efforts or trespass of appellants. The court's charge authorized the jury to consider trespass in answering the damage issues. Appellants cannot for the first time on appeal object to the jury's consideration of trespass in answering the damage issues. Having failed to object to such issues, the appellants waived the error, if any. Rule 279 Texas Rules of Civil Procedure.

■ Each point of error must be germane to some assignment in appellants' amended motion for a new trial. Appellants' brief does not refer us to any assignment to support their points two and three and we are unable to find one. Contrary to their point number two, the jury did find, in answer to issues five and nine, that Mr. and Mrs. Adams did sustain physical illness. The record shows that appellants made no objection to issues five and nine.

Appellants contend the court's definition of "unreasonable collection efforts" placed a greater burden upon them than the law requires. The definition is as follows: " 'Unreasonable collection efforts' means collection efforts, which a person of ordinary prudence, in the exercise of ordinary care, would not have made under the same or similar circumstances." Appellants in their amended motion for a new trial in paragraph ten assert the court erred in submitting its definition of "unreasonable collection efforts" and in paragraph eleven assert the court erred in refusing to submit its definition of *"unusual* collection efforts" as contained in its objections to the charge. In Wagner v. Foster, 161 Tex.

333, 341 S.W.2d 887, (1960), our Supreme Court said:

"Assignments of error in a motion for new trial which do no more than adopt from or refer in general terms to other motions, etc. do not 'specify', or 'distinctly set forth' or 'clearly identify' a ground of error."

Appellants in its objections to the charge requested the court to give the following definition of *"unusual* collection efforts :"

" 'Unusual collection effort' is defined as that collection effort made under such circumstances that they were likely to cause physical harm and done with such an entire want of care as to raise the belief that the actor was consciously indifferent as to whether or not the person affected would or would not sustain bodily harm." The definition given is substantially the same as the ones approved in Moore v. Savage, Tex.Civ.App., 359 S.W.2d 95, (writ ref. n. r. e.), with a per curiam opinion in which the Supreme Court said that "the correctness of the definition actually given is not before us", and in United Finance & Thrift Corporation of Mesquite v. Bain, Tex.Civ.App., 393 S.W.2d 429, (writ ref. n. r. e.), with a per curiam opinion by the Supreme Court, 400 S.W.2d 302, in which the court said:

"The Court of Civil Appeals in its opinion reported in 393 S.W.2d at page 429 cited and quoted from Moore v. Savage, Tex.Civ.App., 359 S.W.2d 95 (writ ref., n. r. e. 1962), but did not take cognizance of the per curiam opinion of this Court reported in 362 S.W.2d at page 298. Similar to the situation in Moore v. Savage, here there was no objection to the definition of 'unreasonable collection efforts', or to the special issue relating thereto, in the court's charge. See Rule 272, Texas Rules of Civil Procedure.

The application for writ of error is refused, no reversible error."

■ Appellants' point five is that the judgment for exemplary damages against the corporate appellants is wrong in the absence of a showing of corporate knowledge or authority or ratification of the actions, submission of which was not requested. Appellee contends this point was not raised in appellants' amended motion for a new trial. Appellee also contends that authorization and ratification were impliedly found by the court in such manner as to support the judgment. Rule 279, T.R.C.P. The evidence was sufficient to support either authorization or ratification. Point five is overruled.

■■ Plaintiff's exhibit number 1 was a ledger card on the Adams' account. The name and address of the borrower, where he works and the payments are kept on the front of the card. On the back of the card, a record of anything that happens on the account, except payment, is kept, such as when the customer calls in or he is called. This card shows fourteen contacts with the Adams during a five months period. Adams testified that the card contains only about one fifth of the calls.

Appellants' contention is that the appellees are bound by the ledger card that they introduced in evidence and cannot offer evidence to contradict it by showing additional calls. There is no merit in this contention. Rule 182, T.R.C.P. authorized Adams to call the witness Pope. It is true that Pope is not a party to this suit but he was the "agent or party in control of the particular matter and things under investigation" and he was working for the corporation which was a party to the suit. It was not necessary for appellee to inform the court that he was calling Pope under the adverse party rule. When Pope testified that he was presently employed by "Termplan, Incorporated, at Akard", it became apparent that his testimony was being adduced under the adverse party rule. In Appell Petroleum Corporation v. G. W.

Townsend Lease Service, Tex.Civ.App., 375 S.W.2d 547, (no writ history), the court said:

"W. H. Appell was president and the majority stockholder of appellant company, and it was not necessary in order to avoid being bound by his testimony that appellee inform the court that he was placed on the stand as an adverse witness. Rule 182, Texas Rules of Civil Procedure; McCormick & Ray, Texas Law of Evidence, Vol. 1 § 485."

■ Points seven to and including thirteen pertain to the alleged improper admission of evidence. We have considered all these points and have concluded that appellants have not discharged their burden of showing that the admission of such evidence was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.

We have considered all the no-evidence points and find no merit in them.

■ We have considered the entire record and hold that the findings of the jury are not against the great weight and preponderance of the evidence.

■ Appellants assert the judgment is fundamentally erroneous because Wilbur Adams is the sole plaintiff and the judgment grants a recovery to Mrs. Adams who is not a party to the suit. This alleged ground of error was not set forth in appellants' motion for a new trial, therefore it is waived. Rule 374, T.R.C.P. This point may not be considered as a fundamental error because it does not involve a matter of public interest and the record does not affirmatively and conclusively show error.

We have considered all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.