**Carolyn Vee BOHN, Appellant,**

v.

**Wilford J. BOHN, Appellee.**

**No. 15610.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 7, 1970.

Rehearing Denied June 18, 1970.

Andrews, Kurth, Campbell & Jones, Homer Mabry, Houston, Adams, Granberry & Hines, F. P. Granberry, Crockett, for appellant.

William E. Wright, Jonathan Day, Houston, Butler, Binion, Rice, Cook & Knapp, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is an appeal from the judgment of the Court of Domestic Relations No. 4 of Harris County, Texas. The opinion of this court on a prior appeal is found in

Bohn v. Bohn, Tex.Civ.App., 420 S.W.2d 165, in which an extensive statement of the facts concerning this case appears.

There are involved in this appeal questions concerning the ownership of certain shares of corporate stock, the division of certain personal property and community real estate, as well as the orders determining support for the minor children, visitation rights, and attorney's fees for the wife. Of particular significance are questions relating to the power of the trial court to place shares of stock belonging to the separate estate of the husband in trust for the purpose of paying college expenses of the children after they attain the age of eighteen years.

 Appellant has presented 99 points of error appropriately grouped for argument. The first three points relate to the alleged error of the court in failing to recognize that the matters in controversy were conclusively established as alleged by appellant by reason of the fact that appellee introduced into evidence without limitation certain of appellant's superseded pleadings. Appellant contends that since appellee introduced appellant's superseded petitions into evidence without limitation the court erred in considering evidence contradicting the statements of fact contained therein. These points cannot be sustained.

It is frequently stated to be the general rule that a party who introduces documentary evidence is not allowed to impeach or contradict it or to accept a part which is in his favor and repudiate another part which is opposed to his claim or defense. However this rule is subject to exceptions. Masterson v. Bouldin, 151 S.W.2d 301 (Tex.Civ.App.—Eastland 1941, writ ref.).

In Jenkins v. Tanner, 166 S.W.2d 167 (Tex.Civ.App.—Amarillo 1942), opinion by Justice Folley, the court said:

"In this connection, we have been unable to find any case holding squarely that one introducing such a pleading without limitation may not, under any circumstances, impeach its recitals by evidence to the contrary. We recognize the general rule that a party introducing documentary evidence is not allowed to impeach or contradict it or to accept a part of it in his favor and repudiate another part opposed to his claim or defense. 20 Am.Jur. 771, Sec. 915. But this rule has its exceptions and variations, as will be noticed in the case of Masterson et ux. v. Bouldin et al., Tex. Civ.App., 151 S.W.2d 301, 308, writ refused. In that case will be found a very elaborate discussion of this rule and its exceptions, but a repetition. of such discussion will serve no good purpose here. The decision of that question in the Masterson case, however, in our judgment is particularly applicable and decisive here. As we understand the holding in that case, wherein the same rule urged here was not applied there, the court based the holding upon the theory that 'the rule does not apply, with the effect to conclude an issue regardless of evidence to the contrary, where the purpose of introducing the documentary evidence is not offered upon that particular issue.' In the instant case the pleading introduced contained nothing in destruction of the appellee's cause of action except the denial, both general and special, of the existence of any cause of action. We think it is highly unreasonable to assume that the appellee intended to deny his own cause of action by the introduction of his adversary's pleading. This fact, as was similarly indicated in the Masterson case, raises the presumption that the pleading was not offered upon the issue as to whether the appellee had a cause of action. It is quite evident that the pleading was introduced for the benefit of the admissions made therein by the appellant, and under such circumstances it should not be held to have concluded the question of the existence of a cause of action which, as above indicated, was clearly made an issue by other evidence."

These pleadings were introduced at the conclusion of the redirect examination of appellant who had been called by appellee as an adverse witness. Before the documents were introduced appellee had indicated by his questions that he proposed to introduce the pleadings to impeach appellant's testimony generally by showing that additional grounds for setting aside the gift of stock were added by each new pleading. Thereafter testimony by appellee directly contradicted many of the facts alleged in the pleadings. The trial court was not required to accept as true all of the self-serving declarations contained in the pleadings. Bonneville v. Wehrman, 106 S. W.2d 834 (Tex.Civ.App.—Waco 1937). See also Pioneer Finance & Thrift Corp. v. Adams, 426 S.W.2d 317 (Tex.Civ.App. —Eastland 1968, error refused, n. r. e.); Holliday v. Smith, 422 S.W.2d 791 (Tex. Civ.App.—Corpus Christi 1967, error refused, n. r. e.); Pigg v. International Hospitals, Inc., 421 S.W.2d 169 (Tex.Civ. App.—Dallas 1967, error refused, n. r. e.); Ballard v. Aetna Casualty and Surety Company, 391 S.W.2d 510 (Tex.Civ.App. —Corpus Christi 1965, error refused, n. r. e.); Trice Production Company v. Dutton Drilling Company, 333 S.W.2d 607 (Tex. Civ.App.—Houston 1960, error refused, n. r. e.); Brumit v. Cokins, 281 S.W.2d 154 (Tex.Civ.App.—Galv.1955, error refused, n. r. e.).

The appellant's next group of points relates to her assertion that on dissolution of the marriage at her instance by reason of fault of her husband, she was entitled to have restored to her the property which she had transferred to her husband as a matter of law. This contention is based on the theory that the consideration for the transfer was the married state and the continuation thereof. There is authority that the violation of the marital vows resulting in a divorce is such a betrayal of the confidence of the marital partner, who had transferred property to the other in reliance on a continuation of the married state, as to cause equity to raise a con-

structive trust in favor of such partner. Osborne v. Osborne, 59 U.S.App.D.C. 288, 40 F.2d 88 (1930), and cases there cited.

In 41 Am.Jur., Husband and Wife, Sec. 269, it is stated: "According to the weight of authority, a divorce although for the misconduct of one's spouse, even for adultery, does not give either any equitable interest in or right to avoid or have set aside a conveyance, transfer, or gift of property made to the divorced spouse before the divorce. * * *"

■ The statement made is supported by the cases cited. There is no Texas authority for the proposition asserted by appellant. One spouse may make a valid gift of his or her separate property to the other spouse. Riley v. Wilson, 86 Tex. 240, 24 S.W. 394 (1893). The rule proposed by appellant would nullify every gift between spouses where a divorce is granted on the basis of fault on the part of the donee, and is too rigid and inflexible.

The better rule is stated in 41 Am.Jur. 2d, Husband and Wife, § 271, as follows:

"It is recognized that the most dominant influence of all relations is that of husband over wife, and transactions between them, to be valid, particularly as to her, must be fair and reasonable and voluntarily and understandingly made. Such transactions are jealously scrutinized to prevent the wife from being overreached or defrauded by the undue influence or improper conduct of the husband; and when they are brought about by anything amounting to constructive fraud on his part they are voidable by the wife. * * *"

■ On the former appeal in this case, we recognized this rule although there are no Texas cases involving the husband-wife relationship. We adhere to this view of the law. Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951); Archer v. Griffith, 390 S.W.2d 735 (Tex.Sup.1965); Beville v. Jones, 74 Tex. 148, 11 S.W. 1128 (1889); Hickman v. Stone, 69 Tex. 255, 5 S.W. 833

(1887); Cooper v. Lee, 75 Tex. 114, 12 S.W. 483; Inman v. Parr, 311 S.W.2d 658, 702 (Tex.Civ.App.—Beaumont 1958, error ref., n. r. e.). That a confidential relationship exists between husband and wife has been recognized in Texas. Wiley and Co. v. Prince, 21 Tex. 637; Tenison v. Patton, 95 Tex. 284, 67 S.W. 92 (1902).

■ The burden rested on appellee to establish the fairness of the transaction. Thus, he must have produced evidence affirmatively showing that he acted in good faith, and that the gift was voluntarily and understandingly made. Archer v. Griffith, supra; Holland v. Brown, 66 S.W.2d 1095 (Tex.Civ.App.—Beaumont 1933, writ ref.); Ivey v. Neyland, 25 S.W.2d 313 (Tex. Com.App., holding approved); Henyan v. Trevino, 137 S.W. 458, 482 (Ct. of Civ. App. of Tex.1911, writ ref.).

■ He must also introduce evidence which, if believed, would prove that no fraud, actual or constructive was perpetrated on appellant. He must disclose material facts within his knowledge and, in this case, consistent with the duty in the lawyer-client relationship, the legal consequences flowing therefrom. Hickman v. Stone, supra; Tenison v. Patton, supra; Bell v. Ramirez, 299 S.W. 655 (Tex.Civ. App.—Austin 1927, writ ref.); Scott v. Weaver, 2 S.W.2d 870 (Tex.Civ.App.— Austin 1927, writ dism'd); Bryant v. Lewis, 27 S.W.2d 604 (Tex.Civ.App.—Austin 1930, writ dism'd).

The rules stated have been applied to the husband-wife relationship in many jurisdictions. Beals v. Ares, 25 N.M. 459, 185 P. 780 (1919); Adair v. Adair, 220 Ga. 852, 142 S.E.2d 251 (1965); Sande v. Sande, 83 Idaho 233, 360 P.2d 998 (1961); Matt v. Matt, 115 Colo. 589, 178 P.2d 419 (1947); Peyton v. William C. Peyton Corporation, 23 Del.Ch. 321, 7 A.2d 737 (1939); Egger v. Egger, 225 Mo. 116, 123 S.W. 928 (1909); 41 Am.Jur.2d, Husband and Wife, § 270 et seq.; Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 3, § 962b, pp. 853–856; Bogert, Trusts and Trustees, 2nd Ed., § 544, et seq.

In Sande v. Sande, supra, the court stressed the point that in a transaction between husband and wife by which the husband is benefited at the expense of the wife, the evidence must show that the transaction was free from any taint of fraud, coercion or undue influence, and that it was fair and equitable.

Where a gift from the wife to the husband is attacked, the question of whether the wife had competent independent advice is deemed most important, and, in some jurisdictions, decisive. Bates v. Bates, 213 S.C. 26, 48 S.E.2d 612 (1948); Peyton v. William C. Peyton Corporation, supra.

These rules apply generally to cases where a confidential relationship is established by evidence. Szekeres v. Reed, 96 Cal.App.2d 348, 215 P.2d 522 (1950); Williams v. Jones, 54 Tenn.App. 189, 388 S. W.2d 665 (1963); In Re Estate of Patterson, 348 S.W.2d 6 (Mo.1961); Wixson v. Nebraska Conference Ass'n, etc., 122 Neb. 771, 241 N.W. 532 (1932).

There is a clear distinction between the rules applicable to testamentary gifts to one in a confidential relationship and those applicable to gifts inter vivos in Texas, although the distinction is not recognized in some jurisdictions. Brewer v. Foreman, 362 S.W.2d 350 (Tex.Civ.App.—Houston 1962); 38 Am.Jur.2d, Gifts, § 93, p. 892 et seq.

Mr. Wilford J. Bohn, appellee, testified that he married Carolyn Mims Bohn, appellant, on June 2, 1957. He stated that in October, 1957, appellant told him that she "would like to give me part of the shares of stock (in the Southland Life Insurance Company) that she held; she would like to share those with me." She told him that he "had been accepted as belonging, and being a part of her family," and that her parents "looked upon me the same way." He told her that she should discuss the matter with her parents, but gave her no other specific advice.

He testified that they discussed the stock on other occasions, and also talked generally about the number of shares owned by various members of the family with appellant's family. He learned that appellant's grandmother had given stock to appellant, and her brother, as well as to appellant's father and mother, and that stock was given to each grandchild. After they had returned from a visit with appellant's parents, appellee related that appellant informed him that she had talked the matter over with both her father and mother and that they said they loved him and she loved him, so they felt it was all right to give him the stock. He then told her "if that made her happy, if this is what she wanted to do, and certainly if it had the sanction and approval of her mother and father, that I understood that there may be—I knew that she may have felt that her having certain stock, and me having none, and her having assets, and me having none might make a difference as far as she was concerned. And if she wished to give this to me, certainly I would be happy to accept, and I did accept, because if it made her happy—We had just been married. * * *"

Thereafter he sought legal advice. Although he was a lawyer and knew the gift would involve a trustee, he had never handled a gift transaction between husband and wife. Appellee then prepared the necessary legal instruments to effect the transfer leaving a blank space for the name of the trustee and for the number of shares to be transferred. That evening he showed the document to appellant and discussed the gift and "she said she wanted to give me half of the shares."

When asked whether he had discussed the tax aspects of the transaction with the lawyer who advised him on procedure, appellee answered, "Not with Warren McDonnell. I did talk with—that was one of the many things that Vee and I talked about." He advised her that no gift tax would be due if she transferred stock having a value of $33,000.00. They determined that this would be 470 shares. On November 22, 1957, they drove to the office of the Insurance Company and completed the transfer. Judge Dee Walker, attorney for Southland Life, acted as trustee. He didn't recall whether they discussed the future transfer of additional shares or the tax aspects of the transfer with the transfer agent and Judge Walker. He was not certain that a definite decision had been made to transfer additional shares. He testified that "it didn't seem to be any of their business as to the reasons why" the transfer was being made.

After the instruments effecting the transfer were executed, Mrs. Bohn took two stock certificates from her purse. Mr. and Mrs. Bohn signed them and gave them to Mr. Evans, the transfer agent.

In January, 1958, 41 more shares were transferred from appellant to appellee. This transfer was accomplished by correspondence. The necessary instruments were executed in Tyler, Texas. Appellee wrote all of the letters. Henry M. Bell, Jr., vice president and trust officer of Citizens First National Bank, Tyler, Texas, acted as trustee. Appellant signed the instruments at the bank.

There was an understanding that the stock would be handled more or less equally between appellant and appellee. There were "two or three understandings with respect to what would have happened to our stock in the event something happened to us."

He testified that appellant followed his advice and judgment only when she wanted to; that she was not a submissive woman. She made her own decisions. He never implored her to give him the stock; he didn't argue with her about it; and he did not threaten her in any way concerning the stock transactions. He did not promise to give the stock back to her if they were ever divorced. He made no representations to her which he knew to be false. He made no remark and undertook no course of conduct for the purpose of persuading appellant to give him the stock.

Appellant's testimony largely contradicted that of appellee. She testified that it was not her idea that she give the stock to her husband; that it was appellee's idea that she give him half of her stock. He advised her with respect to future inheritance taxes, and told her that it "would be the right thing" for her to do to transfer half the stock to him and he promised to give it back to her if they were ever separated other than by death. He was a lawyer and she thought he knew best. He had it worked out so that there would be no gift tax problem. He did not advise her to consult with her family. Her testimony that she did not discuss the matter with her mother before the stock transfer but merely told her about it afterward, was impeached by her deposition testimony that her mother told her that it "would be" all right. They did not have a number of discussions about the gift prior to the time of the transfer. The had discussed the estate tax problems which her mother and father anticipated. He had worked on her *grandfather's* will. He suggested the gift one night and she gave her assent the next morning on the understanding that it would be returned should they be separated other than by death; she told him that she would do it if that was what he thought was best. That same morning they drove to Dallas to transfer the stock. Appellee did all of the talking at his request. When she signed the transfer papers and the gift tax return, she knew what she was doing.

Appellant's testimony concerning the stock transfers and the sale of other shares of her stock was to the effect she did so at her husband's bidding; that she consistently followed his wishes in such transactions. When she sold stock, he would retain enough of the proceeds to pay the estimated capital gains tax. They had some trouble over the years about the amount of money she spent. She didn't think that he treated her with love and kindness even in the early years of the marriage. In November, 1958, at Mr. Bohn's suggestion, they executed wills making the other the

beneficiary. At the time of their marriage Mrs. Bohn was 23 years of age and had taught school for a short time. Mr. Bohn was about 35 years old and had served five years in the armed forces during World War II and the Korean War. They have two children born in 1958 and 1961. A considerable volume of testimony was developed to show a practice in Mrs. Bohn's family of making gifts of stock both by Mrs. Bohn's grandmother, to her son-in-law, as well as her daughter and grandchildren, and by her mother and father to their children, their son-in-law, daughter-in-law, and grandchildren.

■ If appellee has been unjustly enriched by reason of the gift from his wife, a constructive trust for her benefit arose. It is his burden to establish the fairness of the transaction by fully disclosing the facts and circumstances leading up to the gift, by affirmatively showing his good faith, by showing the absence of pressure on his wife to make the gift, and by showing that no unreasonable use has been made of the confidence reposed in him by his wife. Archer v. Griffith, 390 S.W.2d 735 (Tex. 1965); Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951).

Appellee's testimony is sufficient to meet this burden with the possible exception of the question as to legal advice. It is, however, the testimony of an interested witness, and was contradicted by the testimony of appellant. In addition circumstances were established by the evidence from which inferences contradicting his testimony could be drawn. Mrs. Bohn owned at the time of the gift shares of stock having a value of approximately $70,000.00. The couple had no children. Appellee was a lawyer and can be presumed to know that the income from the stock would be community property, and that, in the event of her death prior to the birth of a child, or the execution of a will, he would inherit all of the stock.

On November 13, 1958, just prior to the birth of their first child on December 5,

1958, Mrs. Bohn executed a will, prepared by her husband, leaving all of her estate to him. Apparently appellee was the beneficiary of any estate tax savings to be brought about by the gift of stock. The testimony does not reflect what information concerning the tax aspects of the transaction appellee had conveyed to appellant, or what his conclusions were, other than that these matters were discussed prior to the gift, and that she was advised as to how a gift tax could be avoided. In this respect the facts and circumstances leading up to the gift were not fully disclosed. If untrue representations were made an independent ground for avoiding the transaction would be presented.

If appellee felt that the reason his wife proposed giving him the stock was to place them on an equal basis insofar as assets were concerned so as to promote family harmony, this might well be a case where his failure to suggest that she seek independent legal advice would raise an inference of unfair conduct. As a lawyer he would be expected to know that their assets might be equalized by means other than by an irrevocable gift, and that problems of tax planning and estate plannings, as well as the problems involved in creating inter vivos trusts, would make the services of an experienced lawyer advisable.

The failure of appellee's testimony to show that he had made any attempt to reassure his wife, although he thought that she might feel that her stockholdings would cause them marital trouble, should be weighed in considering the essential fairness of the transaction.

There is direct conflict between the testimony of appellant and appellee as to which party first proposed the gift. This is a factor entitled to great weight in determining the fairness of the transaction, and whether the gift was voluntarily and understandingly made.

The testimony of Mrs. Bohn that the gift was made on condition that the stock be transferred back to her raises an issue

as to active fraud, an independent ground for avoiding the transaction. Burkett v. Burkett, 105 S.W.2d 500 (Tex.Civ.App.— Dallas 1937).

The cases previously cited place the burden on the recipient of a gift, under circumstances such as are presented here, to show that the gift was not the result of undue influence. The trial court submitted an issue reading:

"Do you find from a preponderance of the evidence that Carolyn Vee Bohn's transfers of South Land Life stock made in 1957 and 1958 to Wilford J. Bohn were not the result of undue influence on the part of Wilford J. Bohn?

"* * *

"Definition: You are instructed that the term 'undue influence' as used in the special issue stated above, means such an influence as to subvert or overpower the mind of Carolyn Vee Bohn at the time of the making of the transfers in question, and without which influence the transfers in question would not have been made. The influence is not undue unless the free will and agency of the said Carolyn Vee Bohn was destroyed.

"Undue influence may be comprised of acts and conduct in the nature of force, intimidation, duress, excessive importunity, fraud or deception used in an effort to overcome or subvert the will of the subject and inducing such person to make the transfer contrary to his will."

This issue was answered: "The transfers were not the result of undue influence."

Appellant excepted to Special Issue No. 1 on several grounds, including (1) that it constituted a general charge rather than an inquiry as to the facts, (2) that the definition is not a sufficient definition, but is merely a statement of items which might constitute undue influence and is not sufficiently inclusive; and (3) that the definition is a comment on the evidence and the weight thereof. Appellant also objected to

the charge generally, and to Special Issue No. 1 particularly, for the reason that the court should have instructed a verdict for appellant and the issue, therefore was immaterial.

Special Issues Nos. 2, 3 and 4 were submitted by the court without objection. They read:

2. "Do you find from a preponderance of the evidence that the transfers of the 511 shares of stock in the Southland Life Insurance Company from Carolyn Vee Bohn to Wilford J. Bohn were fair transactions and made with the full understanding by the said Carolyn Vee Bohn that said stock should thereafter be the property of Wilford J. Bohn regardless of what should happen to that marriage at any time thereafter?

3. "Do you find from a preponderance of the evidence that there were statements made by W. J. Bohn to Mrs. Carolyn Vee Bohn prior to the transfers by her in November of 1957 and January of 1958, of the Southland Life Insurance Company stock to W. J. Bohn, that the 511 shares of stock would be returned to her if the marriage were terminated except by death?

"If you have answered Special Issue No. 3 'We do', and only in that event, then answer:

Special Issue No. 4

"Do you find from a preponderance of the evidence that the said Carolyn Vee Bohn would not have made said transfers of said 511 shares of stock in the Southland Life Insurance Company to the name of W. J. Bohn except upon her reliance upon said statements?"

The burden of proof was placed on appellee by Special Issue No. 2, and it was answered "We do".

By Special Issues 3 and 4 a question of fraud was submitted with the burden of proof placed on appellee. The jury failed

to find that appellee represented to appellant that the shares of stock would be returned to her in the event the marriage was terminated except by death, and Special Issue 4 was not answered.

It appears from the charge as a whole that the trial court considered that it was appellee's burden to establish that the gifts did not result from undue influence and that they were fair under the circumstances and were understandingly made. There was no objection to Issues 3 and 4 on the ground that the burden of proof was improperly placed on appellee. Since there was no objection to Special Issue No. 2, the finding that the transaction was "fair" would imply that no fraud or duress was practiced on appellant. Since under the evidence the jury could have believed that appellee broached the subject of making the gifts and consulted with her mother prior to making them, the failure of appellee to suggest securing independent legal advice, would not as a matter of law render the transaction unfair. Nor would the failure to disclose the substance of the conversations relating to the estate taxes be sufficient to require the holding that the transaction was unfair as a matter of law. In the absence of objection these matters would be included within the finding that the transaction was fair.

The definition of undue influence is erroneous in a case such as this as indicating that a person in whom confidence is reposed can exercise undue influence over another only by the acts or conduct described in the second paragraph of the definition. It is further erroneous in that it requires that the influence exercised by appellee must be such as to subvert or overpower the mind of appellant and to destroy her free will and agency. The definition is generally in accord with the definition given in will contest cases, but it is not applicable in a case where it is contended that a gift was induced by a breach of confidence by one in whom confidence was justly reposed by the donor. The cases are inconsistent with the view that to

sustain a gift to one in a confidential relationship with the donor it is only necessary that there be evidence to sustain a finding that the donor's free will and agency were not destroyed or that his mind was not subverted or overpowered. The donee must show from the circumstances surrounding the making of the gift that it was fair and equitable. While a gift procured by undue influence, as that term was defined in the court's charge, could hardly be termed fair and equitable, gifts might not be fair and equitable even though procured by no such undue influence.

Definitions of the words "undue influence" appear in Dolliver v. Dolliver, 94 Cal. 642, 30 P. 4 (1892) and Buchanan v. Prall, 39 N.D. 423, 167 N.W. 488 (1918). In each case it appears that the term "undue influence", as defined by statute, consisted "in the use by one in whom a confidence is reposed by another, * * * of such confidence * * * for the purpose of obtaining an unfair advantage over him; * * * ."

The courts of Texas have approved the use of a definition of "undue infuence" similar to that submitted in this case in cases involving inter vivos gifts, but in none of these cases does it appear that the parties sustained confidential relationships toward each other as a matter of law, and in none of them was such a relationship discussed. Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208 (1954); Besteiro v. Besteiro, 65 S.W.2d 759 (Tex.Com.App.1933). See Beville v. Jones, 74 Tex. 148, 11 S.W. 1128 (1889); Burkett v. Burkett, 105 S.W.2d 400 (Tex.Civ.App.—Dallas 1937).

In Tenison v. Patton, 95 Tex. 284, 67 S.W. 92 (1902), a case involving the sale of property by a corporation to one of its directors, a judgment setting aside the deed was reversed because of the failure of the trial court to submit certain issues requested by the defendant. In this connection the court said:

"The trial court did not submit to the jury all the questions of fact raised by the evidence, the decision of which was essential to a correct disposition of the case; and further issues should, upon the request of defendant, have been submitted. The other facts which there was evidence tending to establish were that a quorum of the board of directors, uninterested in the proposed trade, except for the corporation, fairly and honestly represented it in making the sale; that Tenison did not represent or assume to represent it, but disclosed to the board all facts within his knowledge affecting the advisability of making it, and took no advantage of his position as director and agent, and that the sale was for the value of the land in its then condition, and beneficial to the bank; and that Tenison obtained no undue advantage in the trade. If all these facts should be established, the burden being on Tenison to sustain the trade by establishing them, we think the sale should be held valid and binding on the corporation."

█ Where questions of fraud or duress are raised by the pleadings and evidence, and not by presumption alone, the donor is entitled to affirmative submission of such issues despite the fact that the evidence raising the issues would also be pertinent on the donee's issues of lack of undue influence and of the essential fairness of the transaction. Such an issue was raised by Mrs. Bohn's testimony that appellee promised to return the stock on dissolution of the marriage, and this issue was submitted and the jury failed to sustain her position. Cox v. Mailander, 178 S.W. 1012 (Court of Civil Appeals of Texas—Austin 1915, writ ref.).

Appellant requested the submission of special issues designed to determine whether appellee represented to appellant that because of estate taxes and inheritance taxes it would be to her best interest to transfer to him approximately one-half of her Southland Life Insurance Company stock; whether such statements, if made, were true; and whether "such statements were made" to cause her "to feel that it was to her best

financial interest" to make such a transfer. The third of this series of issues was not predicated and was not in substantially correct form in that it assumes a favorable jury answer to the first issue in the series.

However, appellee was a lawyer and, if such statements were made, was advising his wife on the legal aspects of a transaction by which he would benefit. In so doing he assumed the high duty of an attorney to his client. "The failure of an attorney dealing with his client to disclose to him the material facts and the legal consequences flowing from the facts constitutes actionable fraud." Holland v. Brown, supra.

 If appellee represented to his wife that it would be to her best interest to transfer the stock to him because of estate and inheritance taxes, and the stock was transferred, there is a presumption of fraud. The testimony fails to show that he disclosed to her the facts on which his opinion was based, or that the opinion was legally correct or honestly given. See Matt v. Matt, 115 Colo. 589, 178 P.2d 419 (1947). No presumption of innocence or improbability of wrongdoing will be indulged in the attorney's favor. Henyan v. Trevino, supra. While an issue of fact is raised by the evidence, a party is required to object to the charge, if the burden of negativing fraud rested on appellee, or of requesting issues presented in substantially correct form, if issue is raised by the pleading and evidence as an independent ground of recovery. Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W. 2d 651 (1952); Coffey v. Fort Worth & D.Ry. Co., 285 S.W.2d 453, 458 (Tex.Civ. App.—Eastland 1955); Inman v. Parr, 311 S.W.2d 658, 702, 703 (Tex.Civ.App.—Beaumont 1958, error ref., n. r. e.); Mayflower Investment Company v. Stephens, 345 S. W.2d 786 (Tex.Civ.App.—Dallas 1961, error ref., n. r. e.).

 Appellant did not object to the charge by reason of the failure of the court to submit the question of fraudulent misrepresentation. The issues requested did not present a complete ground of recovery on the basis of fraud considered as an independent ground for recovery since no issues were requested on the truth or falsity of the representation, or on the reliance by appellant on the representations. Texas Associates, Inc. v. Joe Bland Constr. Co., 222 S.W.2d 413 (Tex.Civ.App.—Austin 1949, writ ref., n. r. e.).

The other issues requested by appellant were properly refused by the trial court since they did not constitute ultimate issues of fact necessary for a disposition of this case. The further objections to the charge of the court are without merit.

 The answers made by the jury to the issues submitted were not so contrary to the great weight and preponderance of the evidence as to be clearly wrong. While appellee did not specifically deny that he told his wife that it would be to her best interest to transfer half of her stock to him, the jury was not required to accept appellant's testimony. Inferences could properly be drawn from appellee's testimony that he made no such representation. Appellant's motion for instructed verdict on the question of setting aside the gift transactions was properly denied.

 The trial court did not abuse his discretion in denying the allowance of attorney's fees. Boggs v. Boggs, 306 S.W.2d 237 (Tex.Civ.App.—Amarillo 1957); Wilson v. Wilson, 231 S.W. 830 (Tex.Civ.App. —Austin 1921). There was no abuse of discretion in refusing to require appellee to make the accounting as requested by appellant. No error is presented by the points relating to that portion of the judgment determining custody and visitation rights. Nor do we consider that the trial court abused his discretion in determining the amount of the payments to be made by the father for the support of the children.

Appellee has presented cross-points attacking that portion of the judgment establishing an "Educational Trust" for the pur-

pose of financing the higher education of the minor children of the parties through and until they reach the age of twenty-eight years. The corpus of the trust was 640 shares of the Southland Life Insurance Company stock found to constitute the separate property of appellee and awarded to him by the court.

The judgment provides:

"It is the purpose of this Trust to provide a fund in order that James Wilford Bohn and Norma Leigh Bohn, who are the children of Wilford J. Bohn and Carlyn Vee Bohn, may obtain that degree of higher education beyond high school training (whether college, professional school, graduate school, trade school, or other special training or education beyond high school) to which each beneficiary aspires and which, in the judgment of the Trustee, is within his or her reasonable capacity. In making distributions of income or principal from the Trust in order to effect the purpose of the Trust, the Trustee is to bear in mind the principle of equality between the beneficiaries unless need, health conditions, ability or other circumstances require otherwise in the judgment of the Trustee.

"Therefore, the Trustee is directed to administer the total trust as follows:

"1. The Trustees shall pay to or apply for the benefit of either child, or both, such amounts from the income of the Trust, and, if and to the extent income is insufficient, out of principal of said Trust, as the Trustee, in the Trustee's sole, reasonable discretion, deems necessary to pay all expenses reasonably related to each child securing that degree of higher education beyond high school training (whether college, professional school, graduate school, trade school, or other special training or education beyond high school) to which each child aspires and which, in the judgment of the Trustee, is within his or her reasonable capacity, including such expenses as

tuition, room, board, books, transportation to and from school at reasonable intervals, (excluding the purchase price and the expense of operation of automobiles and other vehicles), clothing, and other expenses necessarily incurred in the pursuit of a higher education as defined herein. The Trustee shall not, however, pay tuition expenses in excess of the amount of tuition charged at a state supported institution offering a comparable program of study to that institution in which a child is enrolled.

"2. The Trustee shall make payments for the above described purposes to or on behalf of a beneficiary as long as, in the opinion of the Trustee, the child is making a good faith effort to pass his work.

"3. If a child is receiving benefits from the Trust Estate, such child shall submit to the Trustee and to plaintiff and defendant, within a reasonable period after the end of each school semester, a copy of a complete transcript of his grades for the courses enrolled in and completed for that semester.

"4. Each child shall continue his or her higher education from year to year without unreasonable interruption or delays; delays or interruptions resulting from illness or military service are not unreasonable.

"5. The Trustee shall have emergency powers, in the event of severe injury or serious and prolonged illness to a beneficiary after he or she reaches the age of eighteen, to disburse funds from the Trust, first from income and then from principal, for expenses incurred and not covered by any type of medical or hospitalization insurance policy or policies providing such care (including but not limited to medical, hospital and nursing expenses). For the purpose of the foregoing, the Trustee shall consider all funds which are available to such child, such as his or her own assets and funds which are known to the Trustee, and,

particularly, funds of any person who is willing and able to provide for the health, support and maintenance of such child.

"6. This Trust shall terminate as to each beneficiary when such beneficiary reaches the age of twenty-eight. No beneficiary is eligible for any benefits of any kind from the Trust Estate after his twenty-eighth birthday.

"7. In the event one of the beneficiaries should die before reaching the age of twenty-eight, the Trust Estate shall remain intact and be maintained by the Trustee for the benefit of the remaining beneficiary. When the younger beneficiary reaches the age of twenty-eight, or in the event one of the beneficiaries should die before reaching the age of twenty-eight, when the last surviving beneficiary of the Trust reaches the age of twenty-eight, or when the last surviving beneficiary dies before reaching the age of twenty-eight, the Trustee shall deliver the then remaining Trust Estate, free of Trust, to Wilford J. Bohn, or to his heirs, personal representatives or assigns, as the case may be."

The trustee is given the power to administer the trust estate "as if such Trustee were the absolute owner thereof", and specifically to convey, lease, mortgage, pledge, partition, sell, exchange or reinvest any of the trust property.

It is contended that the trust impressed on Mr. Bohn's separate property is illegal and void in that it extends child support beyond the age of seventeen and exceeds the jurisdictional authority of the trial court granted by Article 4639a, V.C.S.

It is also contended that the trust is void and beyond the authority of the divorce court for the following reasons:

"A. By Empowering the Trustee to Invade the Corpus of the Trust for the Benefit of the Children, the Provisions of the Trust Effect a Direct Property Award to the Child, a Power Not Within the Authority of the Divorce Court.

"B. By Empowering the Trustee to Invade the Corpus of the Trust For The Benefit and Support of the Children, the Trust Effects a Constructive Execution on the Property of Defendant For Child Support in Controvention of the Established Substantive Law of Texas.

"C. By Empowering the Trustee to Invade the Corpus of the Trust, the Trust Contemplates and Effects a Deprivation of Property Rights Violative of the Due Process. Provisions Guaranteed Plaintiff By The Federal Constitution.

"D. By Allowing the Trustee Complete Discretion In Making Payments Of Income Or Principal of the Trust to the Children, the Trust Violates the Requirements of Article 4639a, Which Requires That Periodic Payments For Child Support Be Definite and Express."

The premise on which these points are grounded is the proposition that Art. 4639a "is the source and limit of judicial power" to require a parent to pay child support. Ex parte Williams, 420 S.W.2d 135 (Tex.1967). This case, as well as ex parte Hatch, 410 S.W.2d 773 (Tex.1967), and Ex parte Hooks, 415 S.W.2d 166 (Tex.1967), hold that the authority of the trial court to order periodic payments for child support enforceable by contempt procedure is derived from Art. 4639a and that the court is limited by that statute to ordering such payments for the support of children until they reach the age of eighteen years.

In none of these cases, however, was consideration given to the question of providing support for the minor children of a marriage by placing property or funds in trust for that purpose. Prior to the enactment of Art. 4639a it was well settled that the divorce court had no authority to require periodic payments for the support of the children of a marriage which will continue after the entry of a final decree of

divorce. Ex parte Taylor, 137 Tex. 505, 155 S.W.2d 358 (1941); Cunningham v. Cunningham, 120 Tex. 491, 40 S.W.2d 46 (1931).

 It is equally well settled that by virtue of the provisions of Art. 4638, V.C. S., it is the duty of the trial court, "in decreeing a divorce, to respect the rights of the children in disposing of the estates of both parents. Art. 4634, R. S. In order to provide revenue for the maintenance of the children, the interest of each parent in the community property and the separate property of both parents may be utilized, subject alone to the statutory limitation that neither party be divested of title to realty. Fitts v. Fitts, 14 Tex. 454; Rice v. Rice, 21 Tex. 58. Thus the law regards the right of minor children to maintenance as paramount to the rights of the parents to the use of any and all property belonging to them." Gully v. Gully, 111 Tex. 233, 231 S.W. 97 (1921).

In Hedtke v. Hedtke, 248 S.W. 21 (Tex. 1923), the court said:

"* * * Instead the court is to do complete equity as between the husband and wife and the children, having due regard to all obligations of the spouses and to the probable future necessities of all concerned. For the purpose of doing equity, the court may award all the personal property to either spouse, and may subject the income, rents, or revenues of all real estate, belonging to either or both of the spouses to the support of either or both of them, or to the education and support of the children."

Article 4638, V.A.C.S., reads:

"The court pronouncing a decree of divorce shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate."

Section 2, Art. 4639a, V.A.C.S., reads:

"This Act shall be cumulative of all other laws upon the same subject, and is not intended to repeal any other law upon the subject of the care or support of such minors."

 The enactment of Art. 4639a did not deprive the trial court of the jurisdiction to provide for the support and education of minor children by subjecting personal property, or the rents and income from real property, to a trust for that purpose. Saylor v. Saylor, 20 S.W.2d 229 (Tex.Civ.App.—Austin 1929); Scott v. Ft. Worth National Bank, 125 S.W.2d 356, 363 (Tex.Civ.App.—Ft. Worth 1939, error dism'd). Since the obligation to support and educate children continues only during the minority of the children, the trial court exceeded his authority in providing that the trust should continue after the youngest child attained his majority, or the daughter married. Ex parte Williams, 420 S.W.2d 135 (Tex.1967).

The court lacked the power to require periodic payments for the support and education of the children after they reached the age of eighteen years, but it was not deprived of the power to make suitable provision for the support and education of the children during their minority as a part of the property division. Both parents had attained college degrees, and at the time of the judgment were possessed of sufficient property that it was not unreasonable to set aside part of it for the expense of a college education for the children. The primary responsibility for this expense rests on the father. The usual age for entrance into college is now near the age of eighteen. The statutes should not be construed to deny the court the jurisdiction to provide for the support and education of the children in connection with the division of the property in addition to periodic payments enforceable only by contempt proceedings.

The cross-points of appellee are not well taken with the exception of Cross-Point

Number One. Since the provisions of the judgment relating to the division of property must be reversed, this provision relating to the trust must also be reversed. Otherwise we would reform the judgment to provide for the termination of the trust on the date Norma Leigh Bohn reaches the age of twenty-one, unless she marries before James Wilford Bohn has then attained the age of twenty-one, in which event it would terminate on his twenty-first birthday.

The judgment of the trial court must be reversed by reason of error affecting the determination of the validity of the gift of stock. Since the status of the stock as separate property of the one or the other party might have affected the decision of the court on the proper division of the property and the amount of support the father should be required to pay as well as other questions involved in this appeal, the ends of justice require that the entire case be reversed and remanded.

Reversed and remanded.